## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COVAD COMMUNICATIONS
COMPANY

              Plaintiff,

    vs.

REVONET, INC.

              Defendant.

Case No.  1:06cv01892
(Hon. Colleen Kollar-Kotelly)

## COVAD COMMUNICATIONS
## COMPANY'S MEMORANDUM OF POINTS AND
## AUTHORITIES IN OPPOSITION TO REVONET, INC.'S MOTION
## FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C)

Plaintiff Covad Communications Company ("Covad"), by counsel and pursuant to LCvR 7(b), submits this Memorandum of Points and Authorities in Opposition to Revonet, Inc.'s ("Revonet") Motion for Judgment on the Pleadings Pursuant to Rule 12(c), and states:

## I.      INTRODUCTION

Revonet's motion should be denied because Covad did not, as a matter of law, contractually authorize Revonet to sell Covad's proprietary, confidential, and trade secret customer lead information ("Covad's Customer Lead Information").  No reasoned reading of the Parties' Mutual Confidentiality and Data Use Agreement (the "Confidentiality Agreement") supports Revonet's interpretation.

At best for Revonet, the Confidentiality Agreement is ambiguous regarding how Revonet was allowed to use Covad's Customer Lead Information.  But even this determination would preclude judgment in Revonet's favor under FED. R. CIV. P. 12(c).

## II.    FACTUAL BACKGROUND

In 2004, Covad embarked on a marketing campaign designed to generate interest in Covad's Voice over Internet Protocol ("VoIP") services and to identify likely customers for Covad's VoIP business.  (Compl., ¶ 10).  On the heels of its marketing campaign, in June 2004, Covad entered into a contract with Revonet, pursuant to which Revonet was to provide certain services to Covad, including, but not limited to "follow[ing] up" with Covad's customer leads generated through Covad's marketing campaign (the "June 2004 Contract").  (Compl., ¶ 13).

To safeguard each others' commercially valuable information, the Parties executed the Confidentiality Agreement and incorporated it into the June 2004 Contract.  (Compl., ¶ 16).[1] The Confidentiality Agreement provides in pertinent part:

> …Client is the sole and exclusive owner of all of its information delivered by Client to Revonet, including without limitation its customer lists, target information and business, sales and marketing plans (the "Client Information"). Client Information is deemed "Confidential Information" under Section 2….
>
> Each party will maintain the other party's Confidential Information in strict confidence and treat the other party's Confidential Information with at least the same degree of care that it treats its own confidential information.  Subject to this Section 2, neither party will disclose the other party's Confidential Information to any person, except its directors, officers, employees, contractors and agents (collectively, "Representatives") who need to know such information and are bound by similar confidentiality obligations.  Notwithstanding the above, Client acknowledges that Revonet is in the business of developing and providing proprietary data products (such as market research reports and sales leads) for the clients.  Therefore, Client acknowledges that Client Information provided by Client consisting solely of customer lists, transaction data and related information, may be incorporated and used in such data products as long as it is used only in an aggregate manner, does not contain personally identifiable information and Client is not identified as the source of such data.  Revonet agrees that the list of sales leads contained in the Work Product provided to Client will not be given by Revonet to third parties, although the foregoing will not restrict Revonet from re-generating or identifying any such leads from Revonet's databases or third party

---

[1] The Confidentiality Agreement is attached to Covad's Complaint and to Revonet's Motion for Judgment on the Pleadings.

sources in connection with services requested by such third parties (in which case the sales leads will be deemed part of a different list).[2]

Over the course of the next two years, Covad entered into two additional contracts with Revonet for essentially the same services as were to be provided in the June 2004 Contract. (Compl., ¶¶ 22-26).  The Parties incorporated the Confidentiality Agreement into each new contract between them.  (*Id.*)  As a result, Revonet's obligations to safeguard and keep confidential Covad's Customer Lead Information remained unchanged throughout the Parties' relationship.  (*Id.*)

Revonet breached its duties to Covad under the Confidentiality Agreement by disclosing to third parties Covad's Customer Lead Information that it misappropriated and converted. (Compl., ¶ 32).  Due to Revonet's actions, Covad has lost significant business and continues to be harmed by Revonet's unauthorized use of Covad's Customer Lead Information.  (Compl., ¶¶ 33-34).

## III.  ARGUMENT

### A.    Revonet Must Overcome A High Standard To Obtain Judgment On The Pleadings.

Revonet accurately describes the high standard it must overcome to prevail on its motion for judgment on the pleadings pursuant to Rule 12(c) and that such motions are determined under the same standards as Rule 12(b)(6) motions to dismiss.  *In re United Mine Workers of America Employee Benefit Plans Litigation*, 854 F. Supp. 914, 915 (D.D.C. 1994).  Moreover, it is "axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  *Hall v. Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at

---

[2] The Confidentiality Agreement is governed by California law.  (Confidentiality Agreement, ¶ 6).

598 (1969)).  Detailed factual allegations are not required in order to withstand such a motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1964 (2007) (citations omitted). Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (internal quotations omitted).  A complaint will survive a 12(b)(6) motion to dismiss even if it is "doubtful in fact," or "recovery is remote or unlikely."  *Id.* (citations omitted).

### B.    Revonet's Interpretation Of The Confidentiality Agreement Is Contrary To Law And Revonet Is In Breach of the Confidentiality Agreement.

The Confidentiality Agreement does not allow Revonet to disclose to third parties Covad's Customer Lead Information.   Instead, the Confidentiality Agreement prohibits disclosure of Covad's "Confidential Information,"[3] which includes Covad's Customer Lead Information, to any person except Revonet's representatives "who need[ed] to know such information."  (Confidentiality Agreement, ¶ 2).  Contrary to Revonet's suggestion that it had a broad license to use or sell Covad's Customer Lead Information, the Confidentiality Agreement imposes important constraints on Revonet's re-generation or identification of sales leads. Specifically, Revonet agreed

> …that the list of **sales leads contained in the "Work Product" provided to Covad** will not be given by Revonet to third parties, although the foregoing will not restrict Revonet from re-generating or identifying any **such leads** from Revonet's databases or third party sources in connection with services requested by such third parties (in which case the sales leads will be deemed part of a different list).

(Confidentiality Agreement, ¶ 2) (emphasis added).  The term "Work Product" is defined in the Confidentiality Agreement as Revonet's "inventions, know-how, designs, reports, prospect lists,

---

[3] "Confidential Information" includes but is not limited to "customer lists, target information, and business, sales and marketing plans" that Covad delivered to Revonet.  (Confidentiality Agreement, ¶ 1).

sales leads, business strategies, software, database models, statistical methods, and other information relating to its lead generation processes that Revonet possesses, acquires from third parties or develops…." (Confidentiality Agreement, ¶ 1). Further, Revonet agreed to "screen and follow up with Covad's customer leads in an effort to convert those leads into actual customers." (Compl., ¶ 13).

If Revonet's interpretation of the Confidentiality Agreement were viable, the prohibition against disclosure of confidential information to any person except Revonet's representatives would be rendered meaningless because Revonet would be allowed to disclose that information to any third party of its choosing. Revonet's interpretation is contrary to the law. *Kavruck v. Blue Cross of California*, 108 Cal. App. 4th 773, 783 (Cal. Ct. App. 2003) ("A contract may not be interpreted in a manner which would render one of its terms meaningless.") (citing *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord, & Freedman*, 65 Cal. App. 4th 1469 (Cal. Ct. App. 1998). Moreover, Revonet's interpretation that it is permitted to disclose or sell Covad's Customer Lead Information to third parties is counter to the goal of the Confidentiality Agreement and the other contracts between the Parties, *i.e.* to foster and not harm Covad's business.

As a matter of law, Revonet's motion for judgment on the pleadings must be denied.

### C. Alternatively, The Confidentiality Agreement Is Ambiguous.

"'A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations.'" *Southern California Edison Co. v. Superior Court*, 44 Cal. Rptr. 2d 227, 232 (Cal. Ct. App. 1995) (quoting *United Teachers of Oakland v. Oakland Unified School District*, 142 Cal. Rptr. 105, 110 (Cal. Ct. App. 1977)); *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 57, n.14 (same) (citing *Consol. Gas Transmission Corp. v. FERC*, 771 F.2d 1536, 1544 (D.C.

Cir. 1985)).   Whether the Confidentiality Agreement is capable of different reasonable interpretations by the Parties "may be determined from the language of the Confidentiality Agreement itself…." *Southern California Edison*, 44 Cal. Rptr. 2d at 232 (citing *United Teachers of Oakland*, 142 Cal. Rptr. at 110).

Covad's interpretation of the Confidentiality Agreement – that Revonet breached the Confidentiality Agreement by disclosing to third parties Covad's Customer Lead Information – is derived from the clauses in the Confidentiality Agreement restricting disclosure of such information to third parties.   (Compl., ¶ 17).   As described above, the Confidentiality Agreement prohibits Revonet from disclosing Covad's Confidential Information to any person except its representatives.   (Confidentiality Agreement, ¶ 2).   Because Covad's interpretation of the Confidentiality Agreement is derived from the language of the Confidentiality Agreement itself, the Confidentiality Agreement is susceptible to Covad's interpretation, and Covad's interpretation is reasonable. *Southern California Edison*, 44 Cal. Rptr. 2d at 232 (citing *United Teachers of Oakland*, 142 Cal. Rptr. at 110).

At the very best for Revonet, the Confidentiality Agreement is capable of two different reasonable interpretations, and, therefore, is ambiguous. *Southern California Edison*, 44 Cal. Rptr. 2d at 232; *Flynn*, 412 F. Supp. 2d at 57, n.14 (D.D.C. 2006).   Any ambiguity, of course, would require extrinsic evidence in order for the Court to determine the intent of the parties, and judgment on the pleadings is an inappropriate remedy. *Mieuli v. DeBartelo*, 2001 U.S. Dist. LEXIS 22518, at *15-16 (N.D. Cal. 2001) ("where the contract language is ambiguous and there is a question of fact concerning the parties' intent, dismissal of a breach of contract claim pursuant to Rule 12(b)(6) is inappropriate.") (citing *Quigley v. Pennsylvania Higher Education Assistance Agency*, 2000 U.S. Dist. LEXIS 19847, 2000 WL 1721069 (N.D. Cal. 2000) (denying

motion to dismiss breach of contract claim where contract was reasonably susceptible to both plaintiff's and defendant's interpretation of the contract) (citing *Barnet v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994))); *Flynn*, 412, F. Supp. 2d at 57 ("'When … the language is unclear and the search for intent extends beyond the four corners of the agreement, the intended meaning of the contract is a disputed and, necessarily, material question of fact and [judgment as a matter of law] is improper.'") (quoting *NRM Corp. v. Hercules Inc.*, 758 F.2d 676, 682 (D.C. Cir. 1985)); *Society for the Advancement of Educ., Inc. v. Gannett Co.*, 1999 U.S. Dist. LEXIS 700, 98-2135, *18 (S.D.N.Y. Jan. 21, 1999) (concluding that judgment on the pleadings was improper where issues of fact existed when different interpretations of a contract term were reasonable). Accordingly, Revonet's motion for judgment on the pleadings should be denied.

Additionally, Revonet asserts that the Confidentiality Agreement "authorized Revonet to incorporate and use Covad's inbound 'Client Information,' which included Coavd's customer lists, transaction data and related information."    (Def's. Mem., p. 7).    However, the Confidentiality Agreement allows such incorporation and use by Revonet for Client Information provided by Covad "consisting **solely** of customer lists, transaction data, and related information."    (Confidentiality Agreement, ¶ 2) (emphasis added).    Nowhere in the Confidentiality Agreement does it provide for Revonet to sell to Covad's customers Covad's Customer Lead Information, which is what Covad alleges Revonet did.

Even if Covad's Customer Lead Information could be considered a part of the "customer lists, transaction data, and related information" that Covad supplied to Revonet and that Revonet could sell to third parties, the Confidentiality Agreement obligated Revonet to incorporate and use such information only "as long as it [was] used in an aggregate manner, [did] not contain personally identifiable information, and [Covad was] not identified as the source of such data."

(Confidentiality Agreement, ¶ 2). Accordingly, if necessary, the Parties would have to submit evidence regarding whether Revonet complied with the conditions set forth in the Confidentiality Agreement.

Because it is unclear whether Revonet used Covad's Customer Lead Information in accord with the Confidentiality Agreement, the Confidentiality Agreement is ambiguous. *Southern California Edison*, 44 Cal. Rptr. 2d at 232; *Flynn*, 412 F. Supp. 2d at 57, n.14. And, because the Confidentiality Agreement is ambiguous, extrinsic evidence is admissible to resolve the ambiguity. *Quigley v. Pennsylvania Higher Education Assistance Agency*, 2000 U.S. Dist. LEXIS 19847, at *14-15 (N.D. Cal. 2000). Therefore, Revonet's motion for judgment on the pleadings should be denied. *Mieuli*, 2001 U.S. Dist. LEXIS 22518, at *15-16.

### C. The Cases Cited By Revonet Are Inapposite.

Revonet relies on only two non-California cases to support its contention that the Confidentiality Agreement unambiguously allowed Revonet to take and use for its own gain Covad's customer lead information. (Def's. Mem., pp.7-9). Revonet's cases, however, are inapplicable to the facts of this case.

In *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711 (S.D.N.Y. 2000), the parties entered into various trademark sharing agreements and one settlement agreement. 103 F. Supp. 2d at 714-19. None of the agreements in *Times Mirror* concerned contract terms similar to those at issue in this case. Indeed, *Times Mirror* lacks any discussion regarding a confidentiality provision. Therefore, *Times Mirror* fails to provide support for Revonet's argument that the Confidentiality Agreement in this case allowed Revonet to misappropriate and convert for its own use Covad's customer lead information.

The only other case that Revonet cites is *Assassination Archives & Research Center v. Central Intelligence Agency*, 48 F. Supp. 2d 1 (D.D.C. 1999). In *Assassination Archives*, the Court found that a lawyer bound by a confidentiality clause was allowed to share with co-counsel certain confidential information that he received from the CIA. 48 F. Supp. 2d at 5. That an attorney might be able to share confidential information with his co-counsel is not a novel or controversial concept. Furthermore, the language in the confidentiality clause in *Assassination Archives*, which allowed for such disclosure, was not qualified by any other terms in the agreement. *Id.* at 3.

The confidentiality clause in *Assassination Archives* bears no relation to the Confidentiality Agreement in this case. Rather, Revonet's disclosure of Covad's confidential information to *competitors* of Covad is in contrast to the disclosure made to co-counsel in *Assassination Archives*. Even were Revonet allowed to disclose Covad's information to third parties of any type, the Confidentiality Agreement provides that such disclosure was conditioned upon three separate requirements by which Revonet failed to abide. (Confidentiality Agreement, ¶ 2). Consequently, Revonet's reliance on *Times Mirror* and *Assassination Archives* is misplaced.

## IV.    CONCLUSION

Wherefore, for the aforementioned reasons, Covad Communications Company respectfully requests that this Court enter an order denying in its entirety Revonet, Inc.'s Motion for Judgment on the Pleadings Pursuant to Rule 12(c), and awarding Covad Communications Company's attorneys' fees and costs in opposing Revonet, Inc.'s Motion for Judgment on the Pleadings Pursuant to Rule 12(c) and any other further relief that the Court deems just and proper.


Dated:    October 22, 2007            SQUIRE, SANDERS & DEMPSEY L.L.P.


                        By:    _____/s/_____
                                John Burlingame (DC Bar #455876)
                                *jburlingame@ssd.com*
                                Nicholas M. Beizer (DC Bar #485894)
                                *nbeizer@ssd.com*
                                SQUIRE, SANDERS & DEMPSEY L.L.P.
                                1201 Pennsylvania Avenue, NW
                                Suite 500
                                Washington, DC 20004

                                David S. Elkins
                                *delkins@ssd.com*
                                Jose L. Martin
                                *jlmartin@ssd.com*
                                SQUIRE, SANDERS & DEMPSEY L.L.P.
                                600 Hansen Way
                                Palo Alto, CA 94304
                                (650) 843-3362

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 22, 2007, a copy of the foregoing Memorandum of Points and Authorities Opposition to Revonet, Inc.'s Motion for Judgment on the Pleadings Pursuant to Rule 12(c) was served on all counsel of record, pursuant to LCvR 5.4(d)(2), via the Court's CM/ECF system.


                                  /s/
                         Nicholas M. Beizer

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COVAD COMMUNICATIONS
COMPANY

               Plaintiff,

    vs.

REVONET, INC.

               Defendant.

Case No.  1:06cv01892
(Hon. Colleen Kollar-Kotelly)

**ORDER**

       This case came on to be heard on Defendant's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (the "Motion") and the Opposition thereto.  In consideration of the Motion, the Opposition, and the record of this case, the Court finds that the Motion should be **DENIED** in its entirety.

It is, therefore,

       **ORDERED** that Defendant's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) be and the same hereby is **DENIED** in its entirety.

       **ORDERED** that Defendant Revonet, Inc. shall pay to Plaintiff Covad Communications Company attorneys' fees incurred in opposing the Motion in the amount of $_____.

       It is so **ORDERED** this ___ day of _____, 2007.


                                    _____
                                    United States District Judge
                                    Hon. Colleen Kollar-Kotelly

Copies to:

John A. Burlingame, Esq.
Nicholas M. Beizer, Esq.
Squire, Sanders & Dempsey L.L.P.
1201 Pennsylvania Ave., N.W.
Suite 500
Washington, D.C., 20004-2401
*Counsel for Covad Communications Company*

Andrew J. Terrell, Esq.
Jennifer S. Jackman, Esq.
Kevin G. Hroblak, Esq.
Whiteford, Taylor & Preston L.L.P.
1025 Connecticut Ave., N.W.
Washington, D.C. 20036-5405
*Counsel for Revonet, Inc.*