**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COVAD COMMUNICATIONS COMPANY<br><br>    Plaintiff,<br><br> vs.<br><br>REVONET, INC.<br><br>    Defendant. | Case No.  1:06cv01892<br>(Hon. Colleen Kollar-Kotelly) |

**COVAD COMMUNICATIONS COMPANY'S NOTICE
<u>RESPONDING TO THE COURT'S APRIL 28, 2008 ORDER</u>**

Plaintiff Covad Communications Company ("Covad") respectfully submits this Notice in response to the Court's April 28, 2008 Order ("Order"). The headings below contain the text of the questions set forth in the Order and retain the same numbering used therein.

**1.    Does Covad assert that the "Customer Lead Information" (defined in Covad's Opposition as "proprietary, confidential, and trade secret customer lead information") is distinguishable from "Client Information provided by [Covad] consisting solely of customer lists, transaction data and related information," as that phrase is used in Paragraph 2 of the Mutual Confidentiality and Data Use Agreement?**

Yes.

**a.    If so, how does Covad assert the two are distinguished?**

Covad's Complaint alleges that it allowed Revonet, Inc. ("Revonet") to access Covad's "proprietary, confidential and trade secret customer lead information" after Revonet executed the Mutual Confidentiality and Data Use Agreement. Complaint ¶¶1, 16-19, 28. Covad alleges that "Revonet took Covad's proprietary, confidential and trade secret inbound customer lead information derived from Covad's advertising campaign and integrated this information into Revonet's Federated Database in violation of the parties' June 2004, June 2005, and January 2006 Contracts." *Id.* ¶29.

That part of Paragraph 2 of the Confidentiality Agreement referring to "Client Information provided by [Covad] consisting solely of customer lists, transaction data and related information," embraces different information. "[C]ustomer lists, transaction data and related information" refers to information about Covad's then-existing actual customers. Such information is not the same as the "Customer Lead Information" because the latter is described as contact and other information for "prospective customers of VoIP services" that Covad developed through a concerted campaign and at great expense. Complaint ¶¶10-11.

**b.    If so, where in Covad's Complaint is such an assertion made?**

Covad describes "Customer Lead Information" in Complaint Paragraphs 1, 10-11 and 28. Covad's Complaint does not allege that Revonet misappropriated or misused "Client Information

. . . consisting solely of customer lists, transaction data and related information." Such information is therefore not described in the Complaint.

2. **Does Covad allege that Revonet incorporated and used Covad's Client Lead Information in Revonet's Federated Database other than "in an aggregate manner, [that] does not contain personally identifiable information and [does not identify Covad] as the source of such data."** *See* **Mut. Conf. & Data Use Agr. ¶ 2.**

This question appears to inadvertently combine the term "Customer Lead Information" used in Covad's Complaint with the "Client Information" referred to in Paragraph 2 of the Mutual Confidentiality and Data Agreement. Covad will respond to this question and its subparts by interpreting "Client Lead Information" first as "Client [] Information" and then, in the alternative, as "Customer Lead Information."

If the Court's question referred to "Client [] Information," the answer to the question is no. Covad does not allege that Revonet misappropriated or misused "Client Information . . . consisting solely of customer lists, transaction data and related information."

In the event that the Court intended the phrase "Covad's Client Lead Information" in the question actually to refer to "Covad's Customer Lead Information," then the answer is yes.

    a. **If so, how does Covad allege Revonet violated these requirements?**

If the Court intended Question No. 2 to refer to "Covad's Client [] Information," this follow-up question is not applicable because Covad does not make such an allegation.

If the Court intended Question No. 2 to refer to "Covad's Customer Lead Information," then Covad respectfully submits that this question remains inapplicable because the restriction in Paragraph 2 of the Confidentiality Agreement—to incorporate or use "in an aggregate manner, [that] does not contain personally identifiable information and [does not identify Covad] as the source of such data"—applies only to "Client Information . . . consisting solely of customer lists, transaction data and related information" (*i.e.*, not Customer Lead Information). Covad specifically alleges that the misappropriation and misuse at issue involves information that falls directly outside of the scope of that restriction—namely, unaggregated, personally identifiable contact information. *See* Complaint ¶¶10-11 (referring to "efforts to identify those potential

customers best suited for Covad's services and to follow-up with those customers"); *id.* ¶28 ("Covad granted Revonet full access to Covad's secure databases that contained the customer lead information derived from the VoIP advertising campaign and other sources"); *id.* ¶29 ("Revonet took Covad's proprietary, confidential and trade secret inbound customer lead information derived from Covad's advertising campaign and integrated this information into Revonet's Federated Database").

     **b.**     **If so, where in Covad's Complaint is such an allegation made?**

See Section 2.a. immediately above.

Dated:   May 12, 2008

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By: /s/ John A. Burlingame
   John Burlingame (DC Bar #455876)
   *jburlingame@ssd.com*
   Kevin M. Blair (DC Bar #493299)
   *kblair@ssd.com*
   1201 Pennsylvania Avenue, NW
   Suite 500
   Washington, DC 20004
   Tel    +1.202.626.6600
   Fax    +1.202.626.6780

   David S. Elkins
   *delkins@ssd.com*
   Jose L. Martin
   *jlmartin@ssd.com*
   600 Hansen Way
   Palo Alto, CA 94304
   Tel    +1.650.856.6500
   Fax    +1.650.843.8777

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 12, 2008, a copy of the foregoing Notice was served on all counsel of record, pursuant to LCvR 5.4(d)(2), via the Court's CM/ECF system.

                                                                                        /s/
                                                    Kevin M. Blair