UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COVAD COMMUNICATIONS
COMPANY,
    Plaintiff,

    v.

REVONET, INC.,

    Defendant.

Civil Action No. 06–1892 (CKK)

**MEMORANDUM OPINION**
(May 20, 2008)

      Currently pending before the Court is Defendant Revonet, Inc.'s ("Revonet") [15] Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendant, Covad Communications Company ("Covad") opposes Revonet's Motion. On April 28, 2008, having reviewed the parties' briefs in connection with Revonet's Motion, the Court issued an Order requesting that Covad provide the Court with answers to certain questions regarding apparent ambiguities between Covad's Complaint and its Opposition to Revonet's Motion. Covad has now filed a Notice in response to the Court's April 28, 2008 Order. The Court has thoroughly considered that Notice, as well as the parties' briefs in connection with Revonet's Motion and the exhibits attached thereto, and concludes that there are material facts in dispute in this case, which preclude the entry of judgment as a matter of law. The Court shall therefore DENY Revonet's [15] Motion for Judgment on the Pleadings. A Status Conference shall be held in this matter, one day earlier than scheduled, at 9:00 a.m. on Thursday, May 29, 2008, at which the Court shall discuss resetting the schedule for discovery in this matter, which was stayed in light of Revonet's Motion for Judgment on the Pleadings.

## I: BACKGROUND

According to the Complaint in this case, Plaintiff, Covad Communications Company, was founded in 1996, and provides integrated voice and data communications for small and medium-sized businesses, including Digital Subscriber Line ("DSL") services as an alternative to local phone companies. Compl. ¶ 8. In 2004, Covad acquired GoBeam, Inc., a provider of Voice over Internet Protocol ("VoIP") solutions to small and medium-sized businesses, and embarked on a "marketing campaign designed to generate interest in Covad's VoIP services, and to identify likely customers for Covad's VoIP business." *Id.* ¶¶ 9-10. Covad's marketing campaign aimed at generating "contact information from prospective customers of VoIP services." *Id.* Covad's Opposition to Revonet's Motion for Judgment on the Pleadings terms this information "Customer Lead Information." Covad Opp'n at 1. According to Covad, its Customer Lead Information "was the direct result of Covad's extensive marketing campaign," and "was commercially valuable, particularly in view of the highly competitive nature of the VoIP market." Compl. ¶ 11.

In June 2004, Covad entered into a contract (the "June 2004 Contract") with Defendant, Revonet, Inc., pursuant to which Revonet agreed to provide Covad with both "inbound" and "outbound" customer lead generation services. *Id.* ¶ 12. "Inbound" lead generation services included assisting Covad in obtaining business from the customer leads developed through Covad's VoIP marketing campaign, for example by screening and following up with Covad's customer leads. *Id.* ¶ 13. "Outbound" lead generation services included providing Covad with additional customer leads using Revonet's "Federated Database," and following up to offer Covad's services to those additional outbound customer leads. *Id.* ¶ 14. According to Covad,

Revonet "touted its Federated Database as a commercially valuable listing of credible customer leads in the telecommunications field," but Covad later learned that "many of the customer leads derived from Revonet's Federated Database were not legitimate." Id. ¶ 15.

As part of the June 2004 Contract, the parties executed a "Mutual Confidentiality and Data Use Agreement" (the "Confidentiality Agreement"). Id. ¶ 16; Revonet Mot., Ex. 1. In relevant part, the Confidentiality Agreement provides:

> [Covad] is the sole and exclusive owner of all of its information delivered by [Covad] to Revonet, including without limitation its customer lists, target information and business, sales and marketing plans (the "Client Information"). Client Information is deemed "Confidential Information " under Section 2. [Covad] grants to Revonet a nonexclusive, limited nontransferable . . . right to use the Client Information that [Covad] provides to Revonet during the applicable term of the Services Agreement solely for (i) Revonet's business purposes as permitted in Section 2; and (ii) for the purpose of performing services to [Covad]. Revonet Mot., Ex. 1, ¶ 1.

The Confidentiality Agreement continues:

> 2. CONFIDENTIALITY.  Each party may disclose confidential or proprietary information about its business or products ("Confidential Information") to the other party.  Each party will maintain the other party's Confidential Information in strict confidence and treat the other party's Confidential Information with at least the same degree of care that it treats its own confidential information.  Subject to this Section 2, neither party will disclose the other party's Confidential Information to any person, except its directors, officers, employees, contractors and agents (collectively, "Representatives") who need to know such Information and are bound by similar confidentiality obligations. . . Notwithstanding the above, [Covad] acknowledges that Revonet is in the business of developing and providing proprietary data products (such as market research reports and sales leads) for its clients.  Therefore, [Covad] acknowledges that Client Information provided by [Covad] consisting solely of customer lists, transaction data and related information, may be incorporated and used in such data products as long as it is used only in an aggregate manner, does not contain personally identifiable information and [Covad] is not identified as the source of such data.  Revonet agrees that the list of sales leads contained in the Work Product provided to [Covad] will not be given by Revonet to third parties, although the foregoing will not restrict Revonet from re-generating or identifying any such leads from Revonet's databases or third party sources in connection with services requested

>by such third parties (in which case the sales leads will be deemed part of a different list).

*Id.* ¶ 2.

From time to time, the June 2004 Contract was amended; however, none of the amendments altered the parties' obligations under the Confidentiality Agreement. Compl. ¶ 20. Over the course of the next two years, Covad and Revonet entered into two additional contracts (the "June 2005 Contract" and the "January 2006 Contract") for essentially the same inbound and outbound lead generation services. *Id.* ¶¶ 22-26. Each of those Contracts incorporated the Confidentiality Agreement. *Id.* 22, 26. In exchange for the lead generation services that Revonet agreed to provide in the various Contracts, Covad agreed to pay between $200,000 and $400,000 per month for outbound lead generation services, and between $4,800 and $6,000 per month per Revonet representative dedicated to provide inbound lead generation services. *Id.* ¶¶ 21, 23. In addition, in 2004, Covad paid $140,000 in set up fees and $125,000 for a survey of the marketplace; in 2005, Covad agreed to pay $100,000 per month for a fixed number of customer attended appointments to close on a deal for Covad services. *Id.*

Covad alleges that Revonet breached its duties to Covad by taking Covad's proprietary Customer Lead Information and integrating it into Revonet's Federated Database, in violation of the parties' Contracts. *Id.* ¶¶ 27-30. Covad further alleges that Revonet shared Covad's Customer Lead Information with third parties, including Covad's competitors, i.e., that "Revonet provided Covad's customer leads to Covad's competitors by taking those leads from its Federated Database." *Id.* ¶ 32. Covad alleges that Revonet is continuing to use Covad's Customer Lead Information without authorization and in violation of the parties' Contracts. *Id.* ¶

34.[1] On May 15, 2006, Covad terminated its January 2006 Contract with Revonet by providing formal notice in accord with the terms of that Contract. *Id.* ¶ 35. Covad filed its Complaint in this action on November 6, 2006. That Complaint includes five Counts: Count I alleges Breach of Contract, *id.* ¶¶ 37-42; Count II alleges Misappropriation of Trade Secrets, *id.* ¶¶ 43-49; Count III alleges Breach of the Covenant of Good Faith and Fair Dealing, *id.* ¶¶ 50-54; Count IV alleges Breach of Fiduciary Duty, *id.* ¶ ¶ 55-61; and Count V alleges Conversion, *id.* ¶¶ 62-65.

The Court held an Initial Scheduling Conference in this matter on February 5, 2007, at which it set a schedule for discovery in this matter. Notwithstanding the Court's instructions that the parties refrain from filing dispositive motions prior to the completion of discovery, on October 11, 2007, Revonet filed its Motion for Judgment on the Pleadings. Briefing on that motion was completed on November 1, 2007, and on November 15, 2007, Revonet moved to stay discovery in this matter pending resolution of its Motion for Judgment on the Pleadings. On November 20, 2007, the Court noted that Revonet had ignored the Court's explicit instructions, but nevertheless stayed discovery pending resolution of Revonet's Motion for Judgment on the Pleadings in order to save the litigants potentially unnecessary discovery expenses.

## II: LEGAL STANDARDS

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) shall be granted if the moving party demonstrates that "no material fact is in dispute and

---

[1] Covad also alleges that "[b]y late 2005, [it] paid Revonet millions of dollars for inbound and outbound lead generation services . . . [but that] many of the leads for which Covad paid a premium did not develop into the VoIP business that Covad had expected. Covad was disappointed with the results of the outbound services that Revonet had provided." Compl. ¶ 24. As Revonet notes in its Motion for Judgment on the Pleadings, however, this allegation does not the form the basis of Covad's causes of action, and is thus irrelevant.

that it is entitled to judgment as a matter of law." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (internal quotation omitted). The standard for reviewing a motion for judgment on the pleadings is the same as that applied to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Dale v. Exec. Office of the President*, 164 F. Supp. 2d 22, 24 (D.D.C. 2001). The Federal Rules of Civil Procedure only require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citations omitted). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences

are unsupported by the facts set out in the complaint." *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

### III: DISCUSSION

Revonet's Motion for Judgment on the Pleadings argues that the terms of the Confidentiality Agreement incorporated in the parties' Contracts "provided restrictions on the use of the data, but [] also specifically carved out exceptions for Revonet's use of the data to build its proprietary database and offer such database leads to its other clients without attribution to Covad. Indeed, the . . . Confidentiality Agreement precisely allows for the uses complained of by Covad in its Complaint." Revonet Mot. at 3. As Revonet correctly points out, Paragraph 2 of the Confidentiality Agreement, explicitly authorizes Revonet to incorporate and use Covad's confidential "Client Information" "consisting solely of customer lists, transaction data and related information" in Revonet's data products "as long as it is used only in an aggregate manner, does not contain personally identifiable information and [Covad] is not identified as the source of such data." Revonet Mot., Ex. 1, ¶ 2. Further, although Revonet agreed that it would not give the list of sales leads it generated for Covad to third parties, the Confidentiality Agreement specifically allows Revonet to "regenerat[e] or identify[] any such leads from Revonet's databases or third party sources in connection with services requested by such third parties." *Id.*

Covad's Opposition, however, asserts that "[t]he Confidentiality Agreement does not

allow Revonet to disclose to third parties Covad's Customer Lead Information." Covad Opp'n at 4. According to Covad's Opposition, the Confidentiality Agreement only allowed Revonet to incorporate and use Client Information provided by Covad "consisting solely of customer lists, transaction data, and related information" and did not "provide for Revonet to sell to Covad's [competitors] Covad's Customer Lead Information." *Id.* at 7. As noted above, upon reviewing the parties' briefs in connection with Revonet's Motion for Judgment on the Pleadings, the Court identified certain ambiguities between Covad's Complaint and its Opposition to Revonet's Motion. *See* Order, Apr. 28, 2008, Docket No. [27]. These ambiguities arose out of Covad's use, in its Opposition, of the defined term "Customer Lead Information," a term that is not defined in Covad's Complaint and is not used at all in the Confidentiality Agreement, which uses the defined terms "Confidential Information" and "Client Information." *See id.*; *compare* Covad Opp'n with Compl. and Revonet Mot., Ex. 1.

Covad's May 12, 2008 response to the Court's Order clarifies Covad's allegations. According to Covad, when Paragraph 2 of the Confidentiality Agreement refers to "Client Information provided by [Covad] consisting solely of customer lists, transaction data and related information," it describes "information about Covad's then-existing actual customers." Covad Notice, at 2. Covad further explains that "[s]uch information is not the same as [so-called] 'Customer Lead Information' because the latter is described as contact and other information for 'prospective customers of VoIP services' that Covad developed through a concerted campaign and at great expense." *Id.* (quoting Compl. ¶¶ 10-11). That this distinction was not apparent in Covad's Complaint or Opposition to Revonet's Motion for Judgment on the Pleadings is amply demonstrated by both Revonet's Motion for Judgment on the Pleadings and this Court's April

28, 2008 Order.

Nevertheless, the Court now understands that Covad alleges "Client Information" and "Customer Lead Information" to represent two different categories of information. In light of this clarification, it is clear to the Court that a genuine issue of material fact exists: namely, whether the term "Client Information" used in the Confidentiality Agreement includes Covad's so-called "Customer Lead Information," in addition to including information about Covad's already-existing customers. Resolving this question will likely require discovery, and certainly cannot be resolved on the record before the Court. As such, the Court must deny Revonet's [15] Motion for Judgment on the Pleadings.

### IV: CONCLUSION

For the reasons set forth above, the Court shall DENY Revonet's [15] Motion for Judgment on the Pleadings Pursuant to Rule 12(c). A Status Conference shall be held in this matter, one day earlier than scheduled, at 9:00 a.m. on Thursday, May 29, 2008, at which the Court shall discuss resetting the schedule for discovery in this matter. An appropriate Order accompanies this Memorandum Opinion.

Date:   May 20, 2008

                                                    /s/
                                               COLLEEN KOLLAR-KOTELLY
                                               United States District Judge