**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COVAD COMMUNICATIONS COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> REVONET, INC. <br><br> Defendant. | Civil Action No. 06-01892 (CKK/JMF) <br><br> (Hon. Colleen Kollar-Kotelly/ <br> Hon. John M. Facciola) <br><br> HEARING REQUESTED <br><br> Next Scheduled Event: <br> Fact Discovery Closes November 26, 2008 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF COVAD COMMUNICATIONS COMPANY TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

**I. INTRODUCTION**

Plaintiff Covad Communications Company ("Covad") brought this action in light of Defendant Revonet, Inc.'s ("Revonet") misappropriation and conversion of confidential, proprietary and trade secret information belonging to Covad, and Revonet's breach of contract. Revonet was retained by Covad in 2004 to assist in the critical expansion of Covad's telecommunications service offerings. While Covad was created as high-speed data service provider, in early 2004 it acquired a small voice service provider which utilized emergent Voice Over Internet Protocol ("VoIP") technology. Covad then embarked on an extensive marketing campaign, the results of which were directed to Revonet for receipt, filtering and preliminary service qualification.

Given the extensive access Revonet would have to Covad's sensitive customer and sales lead information, Revonet and Covad executed a confidentiality agreement as part of

their contract. Revonet, however, took information lawfully belonging to Covad and sold it to competitors of Covad.

Defendant Revonet claims, *inter alia,* that it was "expressly authorized" by the contract to engage in such conduct. (*See* Revonet's Answer and Grounds of Defense, at Further Defenses para. 6; Revonet's Statement of the Case and Statutory Basis for Defenses, at 1.) On October 11, 2007, Defendant Revonet moved for Judgment on the Pleadings, arguing that it was authorized by the parties' contracts to "use the information obtained from Covad in the precise manner asserted in Covad's Complaint." (Motion for Judgment on the Pleadings Pursuant to Rule 12(c), at para. 1.) By Order dated May 20, 2008, Judge Kollar-Kotelly denied Revonet's motion.

Covad served its First Set of Requests for Production of Documents on Revonet on April 27, 2007 ("Covad Document Request").[1] This request sought, in large part, information relating to Revonet's handling of sensitive information belonging to Covad. Revonet responded to the Covad Document Request on June 15, 2007 ("Revonet Document Response"),[2] with a limited hard-copy document production, and the following statements:

(1) "Not all documents have been obtained as Revonet has retained the assistance of an outside consultant to assist in collecting electronic documents."
(2) "Other responsive documents will be produced as soon as they become available."

(Revonet Document Response, at 1.)

Defendant Revonet has failed to produce a single document since June 15, 2007.[3] Despite attempts by Covad to resolve this issue, including conferences and correspondence with

---

[1] The Covad Document Request is attached hereto and incorporated herein as Exhibit A.

[2] The Revonet Document Response is attached hereto and incorporated herein as Exhibit B.

[3] Discovery was stayed for six months, from November 20, 2007 to May 20, 2008, due to the

opposing counsel and a brief discussion of the issue in a conference call with Judge Kollar-Kotelly on August 25, 2008, Revonet's disregard of its discovery obligations has continued and warrants the instant motion.[4]

## II. COVAD'S ATTEMPTS TO RESOLVE THE DOCUMENT PRODUCTION ISSUE[5]

The undersigned filed Notice of Substitution of Counsel on July 14, 2008, and were welcomed into the case with letters from Defendant Revonet claiming various discovery shortcomings. Upon our review of the file and status of discovery, Revonet was likewise reminded of its discovery deficiencies, including Revonet's failure to produce documents promised more than a year prior. On August 18, 2008, Covad sent correspondence to Revonet detailing the shortcomings of the Revonet document production.[6]

Covad undertook immediate steps to address the issues raised by counsel for Revonet. In the past few weeks, Covad has provided to Defendant a Supplemental Response to Revonet's Request for Production of Documents, a Supplemental Response to Revonet's First Set of Interrogatories, and Responses to Revonet's First Set of Requests for Admissions.

Discovery from Revonet, however, has not been forthcoming. During an August 20th conference call, for example, Revonet counsel stated that Revonet would make only hard-copies of responsive documents available for inspection, at their offices. Moreover, Revonet counsel asserted that any photocopying costs for these documents, which we are told encompass

---

pendency of the Revonet Motion for Judgment on the Pleadings denied by Judge Kollar-Kotelly.

[4] Following the conference call with Judge Kollar-Kotelly, an Order was entered referring this case to Magistrate Judge John M. Facciola for the disposition of all pending and future discovery-related motions pursuant to L.C.v.R. 72.2(a).

[5] This motion deals only with Revonet's failures as they relate to Covad's Document Request, in the hope that other lingering discovery issues will be resolvable without Court intervention.

[6] Covad's August 18th correspondence is attached hereto as Exhibit C. On August 8, 2008, Covad had also served correspondence on Revonet detailing deficiencies in Defendant's Responses to Covad's Interrogatories.

35,000 printed pages, would be assessed to Covad. Revonet refused to produce the documents in the electronic form in which they are ordinarily maintained.

Most recently, on September 3, 2008, Revonet counsel stated that "Revonet is not opposed to making the paper documents that are available for review at our office available as TIFF's." (Letter from Jennifer Jackman to Andrew M. Klein, at 6).[7] However, Revonet then added that it "will not . . . agree to be responsible for the costs and attorney's fees associated in [*sic*] producing those documents electronically." (Id.).

With regard to additional documents apparently distinct from Revonet's electronic production, Revonet also represented via email on August 22, 2008, that Supplemental Responses to the Covad Document Request were being provided by September 5, 2008. On September 5th, however, Revonet did not produce any documents, choosing instead to serve roughly 30 pages of objections and additional proffers. (*See generally* Revonet Supplemental Response).[8]

### III. ARGUMENT

**A. *Revonet Is Required to Produce All Relevant Electronically Stored Information Responsive to Covad's Document Requests.***

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things[.]" Fed. R. Civ. P. 26(b)(1). Under this rule, the scope of permitted discovery includes all relevant electronically stored information that is "reasonably accessible." Fed. R.

---

[7] The Sept. 3, 2008 letter from Jennifer Jackman to Andrew M. Klein is attached hereto as Exhibit D. Andrew M. Klein's letter in response, dated Sept. 9, 2008, is attached hereto as Exhibit E.

[8] Revonet's Supplemental Response is attached hereto as Exhibit F.

Civ. P. 26(b)(2)(B). The 2006 Committee Notes for Rule 26(b) specifically clarify that electronically stored information is generally expected to be produced in a given case, as "[t]he volume of -- and the ability to search -- much electronically stored information means that in many cases the responding party will be able to produce information from reasonably accessible sources[.]"

The Covad Document Requests properly encompass electronically stored information. [9] As a result, the following Covad Document Requests would, among others, certainly be expected to result in production by Revonet of electronically stored information:[10]

**COVAD REQUEST NO. 2**: All internal Revonet correspondence or documents related to Covad.

**COVAD REQUEST NO. 7**: All documents establishing, reflecting or relating to the time period when Revonet's Federated Database included any Covad information.

**COVAD REQUEST NO. 8**: All documents reflecting the fact or substance of any person having access to Covad's information, including but not limited to Covad's information in Revonet's Federated Database, since June 29, 2004.

**COVAD REQUEST NO. 9**: All documents reflecting the fact or substance of Revonet adding any Covad information to its Federated Database.

**COVAD REQUEST NO. 21**: All documents establishing, reflecting or relating to Revonet's handling of Covad's information.

**COVAD REQUEST NO. 22**: All documents establishing, reflecting or relating to Revonet's incorporation of Covad's information into its Federated Database.

**COVAD REQUEST NO. 36**: All documents that reflect the source of any information, including but not limited to any sales leads that were incorporated into Revonet's Federated Database from June 2004 to July 2006.

---

[9] *See* Covad Document Request, at 2 (definition of "document" covers electronically stored information).

[10] Due to the voluminous nature of the Covad Document Requests and Revonet Supplemental Response, they are attached hereto as Exhibits and incorporated by reference instead of being restated in their entirety herein.

**COVAD REQUEST NO. 37**:  All documents that reflect the source of any information, including but not limited to any sales leads, that was incorporated into any Revonet database or data product from June 2004 to July 2006.

**COVAD REQUEST NO. 41**:  All documents sufficient to identify all Revonet customers that received any information from any Revonet compilation, database or data product, including but not limited to Revonet's Federated Database, since June 2004.

Indeed, Revonet has already acknowledged that the information to be produced is electronically stored.  Revonet's Initial Rule 26 Disclosures specifically note that Revonet possesses e-mails, databases, and other presumably electronic documents relevant to this action.  (Revonet's Initial Disclosures, at 3.)[11]  Further, Revonet has expressly stated that it "has retained the assistance of an outside consultant to assist in collecting electronic documents" responsive to the Covad Document Requests.  (Revonet Document Response, at 1.)  Revonet also specifically notes in its general objections that documents responsive to Covad's requests include "electronically stored information from [Revonet's] Federated Database."  (Revonet's Supplemental Response, at 2.)  It is therefore undisputed that Revonet possesses electronically stored information that must be produced in its native format in response to Covad's Document Requests.[12]

Revonet has not, however, produced the electronically stored information in electronic format.  This failure is critical since Covad reasonably anticipates that the electronically stored information in Revonet's possession will reveal admissible evidence concerning Revonet's improper use of the sensitive Covad information.  This expectation is founded, in part, upon the Declaration given by a former Revonet employee, which states, in relevant part:

---

[11] Revonet's Initial Disclosures are attached hereto as Exhibit G.

[12] Defendant Revonet should be directed to provide such electronically stored information in native format, unless such electronic data would be unreadable without proprietary software not also produced.

6

> [Revonet CEO] Mr. Howard ordered [Revonet team members] to remove all information related to Covad from inbound calls and e-mails from Covad leads. This included information related to how the leads were originated (for example, from a Covad print advertisement). Once the customer service representative removed all of the Covad-specific information from the lead, Mr. Howard instructed us to download those leads into a Revonet database. After those leads were downloaded into the database, they became a "generic lead." At that point, Revonet's customer service representatives were able to see that potential customers were interested in VoIP services, but they would not know that these were actually leads generated by Covad on its own. (Declaration of Chad Zortman, at 3).[13]

It is therefore crucial that Covad be provided with all responsive electronic documents in their native form, as information contained in the electronic documents are expected to reveal, *inter alia,* that (a) Revonet improperly stripped details that would identify the information at issue as belonging to Covad, (b) Revonet downloaded such information into Revonet's electronic database as a generic lead, (c) which Revonet employees or agents took such actions, and (d) when such conduct occurred. Production of such electronically stored information is required by the Federal Rules of Civil Procedure.

### B. Revonet Must Produce The Electronically-Stored Information In Its Native Format.

The Federal Rules of Civil Procedure specifically require, as to electronically stored information, that Revonet produce the information "in a form or forms in which it is ordinarily maintained" or in a "reasonably usable" form. Fed. R. Civ. P. 34(b)(2)(E)(ii). This requirement applies to, *inter alia*, e-mail messages, electronic word processing documents, electronic spreadsheets, and electronic databases responsive to Covad's requests. Fed. R. Civ. P. 34(b) Advisory Committee Notes (2006 Amendments). This relatively new rule was instituted to "protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party." Id.

---

[13] The Declaration of Chad Zortman is attached hereto as Exhibit H.

Indeed, even the option to produce information in a "reasonably usable" form "does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." Id.  The Advisory Committee went on to specify that "[i]f the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." Id.

Further, case law also supports a finding that Revonet's production of the information requested should be in the form in which it is ordinarily maintained.  In the Eastern District of California's 2008 *L.H. v. Schwarzenegger* case, the Defendants had converted electronically stored information from its original format, which had been searchable and sortable, into PDF files that lacked these capabilities.[14]  The court concluded that "Defendant's actions violated Rule 34 in producing documents which were not searchable or sortable."[15]  Id. The court also found that Plaintiffs were prejudiced by what appeared to be Defendant's "purposeful foot dragging on discovery" and were forced to spend "unnecessary time, effort and costs in seeking discovery."  Id. at 5.  The court therefore determined that sanctions were appropriate.  Id. at 5.

The U.S. District Court for the District of Kansas reached a similar conclusion last month in *White v. Graceland College Center for Professional Development & Lifelong*

---

[14] No. CIV S-06-2042 LKK GGH, slip. op. at 3 (E.D. Cal. May 14, 2008).

[15] In so finding, the court rejected Defendant's contention that Plaintiffs did not request the documents in native format and that the court's prior orders did not so specify.

8

*Learning, Inc*.[16] There, as here, Defendants did not state the format in which it intended to produce the electronically stored information, converted the electronically stored documents to PDF, printed them, and produced the paper printouts to Plaintiff. Id. at 9. The court, citing Rule 34(b)(2)(E)(ii) and the Advisory Committee Notes, determined that Defendant's actions failed to meet the requirements of the federal rule. Id. at 10. In particular, the court found that the production met neither of the 34(b)(2)(E)(ii) requirements since they were not (1) produced in the form ordinarily maintained, nor (2) given the conversion to PDF and print out, in any other reasonably usable form. Id. at 11. The court required that Defendant produce the documents "in their native format." Id.

The manner in which Revonet has proposed to produce the information – on paper, for review at counsel's office – would indisputably make it far more difficult and burdensome for Covad to use the information efficiently in this case. As discussed above, due the nature of this dispute, it is critical that Covad obtain and review this information in its native electronic format.

Further, Revonet's recent proposal to produce the information – for review at counsel's office, in TIFF format, with Covad paying "costs and attorney's fees" – is likewise defective. First, while Revonet has failed to indicate the format in which the information is ordinarily maintained, we do not believe it to be TIFF. Moreover, TIFF format is unlikely to be as searchable as the information's native format, while potentially critical information is also likely to be lost in the conversion.[17]

---

[16] No. 07-2319-CM, slip op. at 9-11 (D. Kan. Aug. 7, 2008).

[17] Covad acknowledges the mutual direction in Rule 26(f) that the form of production for electronically stored information be discussed by the parties at the outset of the case. Since Covad's current counsel was not counsel during the initial discovery phase of this case, we are not aware of the scope of any such discussions that took place at that time. However, Revonet's correspondence from that time period does not reflect any objection to producing electronic documents in their native format;

9

Second, Revonet has the obligation to provide the information, electronically, to Covad, without any attempt to inappropriately shift the costs of production to Covad. As this Court recently confirmed in *Peskoff v. Faber*, under the Federal Rules "the presumption is that the responding party…must bear the expense of complying with discovery requests."[18] Indeed, "[t]his presumption continues to operate where the discovery sought is electronically stored information." Id. [*citing* Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 317 (S.D.N.Y. 2003)]. Thus, Revonet must bear the cost of its production of responsive documents. As the documents requested undoubtedly include electronically stored information, that information must be produced by Revonet in its native electronic format.

---

rather, its own documents indicate that discoverable material in Revonet's possession includes electronically stored information. (*See, e.g.,* Revonet's Initial Rule 26 Disclosures, at 3, noting emails, databases, and reconciliation documents, among other electronically stored items.)

[18] No. 04-526 (HHK/JMF), slip op. at 2 (D.D.C. July, 7, 2008) [*quoting* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978)].

WHEREFORE, Plaintiff Covad Communications Company respectfully requests that the Court order Defendant Revonet, Inc. to fully respond to Covad's First Set of Requests for Production of Documents in compliance with the requirements of the Federal Rules of Civil Procedure, within ten (10) days of said order, and to order Revonet to reimburse Covad for the costs and attorneys' fees Covad has incurred in preparing this motion and pursuing this relief.

Dated: September 12, 2008

                                                Respectfully submitted,

                                                _____/s/_____
                                                Andrew M. Klein (Bar No. 479417)
                                                KLEIN LAW GROUP PLLC
                                                601 13th Street, N.W.
                                                Suite 1000 South
                                                Washington, DC 20005
                                                Tel: (202) 289-6955
                                                Fax: (202) 289-6997
                                                AKlein@KleinLawPLLC.com

                                                *Attorneys for Plaintiff*
                                                *Covad Communications Company*