IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COVAD COMMUNICATIONS
COMPANY

       Plaintiff

v.

 

REVONET, INC.

       Defendant

Civil Court Action No:  1:06cv01892
Next Scheduled Event: Fact Discovery
Closes: November 26, 2008

Judge Kollar-Kotelly: Presiding
Magistrate Judge Facciola:  Referral

---

**REVONET'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

COMES NOW defendant Revonet, Inc. ("Revonet"), by its undersigned counsel, with its Opposition to the Motion to Compel , and for grounds states as follows:

Covad's Motion to Compel must be denied as it is asking this Court to compel that which was never requested.  As an initial matter, Covad has *never* requested native documents.  The first time the request for native documents was made was in the instant Motion to Compel which most certainly violates Local Rule 7(m) and thus, warrants no further consideration of this request.  Moreover, because Covad never requested native documents, Covad cannot compel documents that were never  requested.  Likewise, Covad's request that documents be produced electronically must be denied as it specifically defined the documents to be produced as "tangible" documents and did not request any documents to be produced electronically.  Absent specification otherwise, Revonet was permitted to produce the documents in a reasonably usable format - - which it did - - in the very same format used by Covad in producing electronically

stored information.  As Revonet is not required to produce these documents in more than one form, Covad's Motion to Compel must be denied.  For the reasons that follow, Revonet seeks an Order denying Covad's Motion to Compel and awarding Revonet its costs and attorney's fees incurred in defending the motion.

## I.    <u>BACKGROUND</u>

During the time period of June 2004 through May 2006, Revonet provided several services for Covad Communications Company ("Covad"), including sales lead generation. Revonet generated "outbound sales leads" for Covad by using Revonet's database to identify customers with potential VoIP interests and called into the market in an attempt to generate sales leads for Covad.  Revonet also generated "inbound sales leads" by responding to incoming phone calls and web inquiries from potential customers who voiced interest in Covad's services. In performing inbound lead generation services, Revonet, through the fruits of its labor, obtained information from potential customers who made inquiries of Covad to determine whether those companies met the criteria Covad required and if so, Revonet converted the inquiry into a sales lead.

In 2004 and again in 2006, Revonet and Covad entered into a Confidentiality and Data Use Agreement ("Data Use Agreement").  (<u>See</u> Motion for Judgment, Ex. 1, Doc. No. 1).  Per that Data Use Agreement, Revonet and Covad agreed that "Revonet is the sole and exclusive owner of . . . sales leads . . . and other information relating to its lead generation processes that Revonet possesses, acquires from third parties or develops . . . ."  Further, the parties agreed that "sales leads" were Revonet's "Work Product".  In signing the Data Use Agreement, Covad acknowledged that Revonet is in the business of developing and providing proprietary data products including sales leads for other clients and that information provided by Covad may be

incorporated into Revonet's database in an aggregate manner.  The parties also agreed that the list of sales leads contained in Revonet's Work Product that were provided to Covad would not be given to third parties but that Revonet was permitted to re-generate or identify such leads from its database or third party sources for services requested by third parties.

In November 2006, Covad filed suit against Revonet alleging that Revonet integrated the information Revonet derived from performing inbound lead generation services for Covad into Revonet's database and sold this information to Revonet's other customers. (See Complaint, Docket No. 1).   Covad served its First Set of Request for Production of Documents on April 27, 2007.  The Request for Production of Documents included several definitions, one of which is particularly instructive for resolution of the motion to compel.  "Document" or "documents," were defined to mean:

> **Any tangible thing** upon which any expression, communication, representation or data has been recorded by any means including, but not limited to, handwriting, typewriting, printing, photostating, photographing, on a computer, instant messages, magnetic impulse, or mechanical or electronic recording and any non-identical copies (whether different from the original because of notes made on such copies, because of indicates that such copies were sent to different individuals than were the originals,  or because of any other reason). . . . (*Emphasis added*).

(See Covad's First Set of Request for Production of Documents, Ex. A, Doc. 43-3).

Revonet responded to Covad's Request for Production of Documents on June 15, 2007 and produced thousands of pages of documents in paper form to Covad.  These documents included emails, spreadsheets, draft documents and other electronically stored information that was readily available to Revonet.  Revonet understood that portions of its highly proprietary, trade secret Federated Database were also responsive to some of Covad's requests but objected to providing unfettered access to its proprietary database.  Instead, Revonet provided a detailed description of its database and offered to conduct searches of the database on Covad's behalf and

to produce the results of such searches so that Covad would obtain responsive information, without having unfettered access to Revonet's database.   Covad did not object to this proposal.

Likewise, Covad responded to Revonet's First Set of Requests for Production of Documents in June 2007 and, like Revonet, Covad produced thousands of documents in paper form. This document production included more than 4,700 pages of documents comprised of electronically stored information such as emails, draft documents, power point presentations and spreadsheets.  (See eg.  Documents Bates Numbered COV 000182-000183, COV 000503-000582, COV 000630-000632, COV 000746- 000750, COV 001779, COV002257-002258  filed under seal as **Exhibit 1**).

As part of its investigation into finding responsive documents, Revonet determined that additional emails existed that were not readily available to Revonet. In an effort to provide full disclosure and in a showing of good faith, Revonet made the decision to engage a third party company to assist in collecting and producing these emails. Revonet advised Covad of this decision in its Responses to Requests for Production of Documents stating that, "[n]ot all documents requested have been obtained as Revonet has retained the assistance of an outside consultant to assist in collecting electronic documents.  The documents that have been collected are being produced herewith.  Other responsive documents will be produced as soon as they become available."[1]  (See Revonet's Response to Covad's Request for Production of Documents, Ex. B to Plaintiff's Motion to Compel).

After the parties' initial document productions, the parties engaged in negotiations in an attempt to resolve the case.  During that time period, the parties informally agreed that discovery would be placed on hold so that the parties could focus their efforts on resolution.  When it

---

[1] As part of that process, Revonet contacted Covad seeking Covad's input in developing search terms prior to filtering the emails.  Covad did not respond.

4

became clear that the parties would not be able to resolve the case, Revonet filed its Motion for Judgment after which, the case was stayed for six months pending the Court's consideration of Revonet's Motion for Judgment. (See November 20, 2007 Order, Doc. No. 24). On May 20, 2008, Judge Kollar-Kotelly denied Revonet's Motion for Judgment noting that resolution of the motion required discovery. (See Memorandum Opinion, May 20, 2008, Doc. No. 30).

A new Scheduling and Procedures Order was entered on May 29, 2008. (See Order, May 29, 2008, Doc. No. 33). Per that Order, discovery now closes on November 26, 2008. At the Court's direction, the parties filed a Joint Status Report as to Discovery Plan which set forth the following deadlines:

- Each side to identify deficiencies with prior discovery responses (discovery that occurred prior to the 2007 stay) by July 8, 2008.
- The parties will work together in good faith to confer and resolve such disputes by August 1, 2008. If issues not resolved, they will be then brought to the Court's attention.
- Fact Witness Depositions to be completed by September 12, 2008.

(See Joint Status Report, Doc. No. 35).

During the process of preparing the Joint Status Report, counsel had general discussions regarding the outstanding discovery requests. With regard to Revonet's database, Covad advised that it would be requesting additional information regarding the "40 unique fields" so that it could tailor its searches of the database to be performed by Revonet. Additionally, in light of the fact that the issues in the case had been substantially narrowed (and clarified by Covad) as a result of the Motion for Judgment, in an effort to tailor the responsive documents to the actual issues in the case, Revonet asked Covad whether it intended to narrow the scope of its prior requests before Revonet produced the voluminous emails so that the parties could avoid sifting through thousands of emails that were unrelated to the narrow issues in the case. Covad did not respond to this offer.

Per the Joint Status Report, the parties agreed to identify any deficiencies with the 2007 discovery responses by July 8, 2008. That date passed without Covad identifying *any* deficiencies with regard to Revonet's discovery responses, let alone issues arising from the form of Revonet's document production. Having received no notice of any issues from Covad nor a response to Revonet's request to narrow the scope of the requests, in good faith, Revonet moved forward with producing the additional emails. After the emails were made available, Revonet engaged in the painstaking and time consuming task of reviewing the documents to redact privileged information and to remove non-responsive documents - - a process which took several days.

On August 4, 2008, Revonet advised Covad in writing that the additional documents were available for review at counsel's office. (See August 4, 2008 letter to Mr. Klein, attached as **Exhibit 2**). Covad did not respond to this letter or schedule an appointment to view the documents. Instead, two weeks later, Covad sent a letter to Revonet, identifying alleged deficiencies with regard to Revonet's Responses to Requests for Production of Documents, without any acknowledgement of Revonet's earlier letter advising Covad that the documents were available for Covad's review, inspection and copying. Importantly, Covad's letter, which came more than one month after the deadline set forth in the Joint Status Report, did not identify *any* issues with regard to the parties' mutual practice of providing responses in paper form.

During a conference call on August 20, 2008, Revonet reminded Covad that the documents, which totaled more than 35,000 pages, were available for review. Initially, Covad inquired as to the cost of having copies of the document made. Later, apparently dissatisfied with having to pay for copies, Covad requested that Revonet simply give Covad Revonet's only set of documents at no cost. When Revonet rejected that request, Covad requested Revonet to

produce the documents in TIFF form - -the first time such request was ever made. Revonet objected to this request on the basis that producing the documents in a different form that was not previously requested would result in an undue burden to Revonet. Covad requested Revonet to investigate how great this burden and expense would be and to advise Covad accordingly.

Two days later, on August 22, 2008, *Covad* produced additional electronically stored documents in <u>paper format</u>. The documents produced by Covad on August 22, 2008 included the very same type of electronically stored documents Covad now claims should have been produced in an electronic format - - e-mails, spreadsheets and other computer related documents. (<u>See</u> eg. Documents Bates Stamped CO4774-4787, CO4868-04877, CO4916, CO4952, CO4999-5004, CO5108-5114, CO5161-5165 filed under seal as **Exhibit 3**).

On September 2, 2008, Covad sent a letter to Revonet inquiring as to Revonet's investigation into the burden associated with Covad's request that Revonet re-produce the paper documents electronically. (<u>See</u> September 2, 2008 letter attached as **Exhibit 4).** On September 3, 2008, Revonet advised Covad that despite having already produced these documents, it would be willing to make the documents available in a TIFF format, but that the expense of producing these documents in an additional format would need to be paid by Covad. (<u>See</u> September 3, 2008 letter attached as **Exhibit 5).** Revonet explained that producing the documents in the newly requested format would require Revonet to manually delete the non-responsive and privileged TIFF's that were previously redacted from the paper production and estimated that such task would take between 5-10 hours. Revonet agreed to have a paralegal complete this task, provided Covad agreed to pay her fees. (Exhibit 5).

In response to Revonet's proposal to make the TIFF's available, provided that Covad incur the costs associated with this newly requested form of production, Covad left counsel a

voice mail message advising her that her suggestion was "absurd" and filed the instant motion to compel seeking, for the very first time "native" documents. [2]

As for other issues raised by Covad in its August 18th letter, Revonet agreed to address those issues with Supplemental Responses to Request for Production of Documents by September 5, 2008. [3] As promised, on September 5, 2008, Revonet served Covad with Supplemental Responses to Plaintiff's First Set of Requests for Documents addressing the remaining issues identified by Covad in its August 18th letter. For example, in the August 18th letter, Covad objected, for the very first time, to Revonet's offer to perform searches on its database at Covad's request as opposed to providing Covad with access to the database. In response, Revonet agreed to make the portions of the database that are responsive to Covad's document requests available, for inspection by counsel in the form in which the database is ordinarily maintained on a date and time that is mutually agreeable to the parties. Covad has not yet attempted to schedule such inspection.

## II.    ARGUMENT

Covad's Motion to Compel must be denied as it is asking this Court to compel that which was never requested. [4] As a threshold matter, **Covad has never requested Revonet to produce**

---

[2] Contrary to Covad's suggestion on p. 9 in its Motion to Compel, Revonet's proposal to make the TIFF's available was not contingent upon review of those TIFF's in counsel's office. If Covad pays the costs associated in duplicating Revonet's efforts to reproduce the paper documents in TIFF form (redaction of non-responsive and privileged documents that were redacted from the paper production), Covad will receive those images on disc to be reviewed whenever and wherever counsel chooses to review the documents.

[3] By letter dated August 24, 2008, Revonet also advised Covad that it had begun the investigation as to the burden associated with Covad's new request that the documents that were already made available be produced in an electronic format. (See August 24, 2008 letter attached as Exhibit 6).

[4] Covad's Motion to Compel contends that Revonet has not produced any documents since June 15, 2007. This is entirely inaccurate. In addition to the documents that have been made available for Covad's inspection in Revonet's counsel's office since August 4, 2008, Revonet supplemented its previous responses on September 15, 2008 and produced an additional 2800 pages of documents by hand delivery. These documents were compiled and being copied and bate stamped prior to the time that Covad filed its Motion to Compel. Had counsel spoken with Revonet prior to filing the Motion to Compel, as required under Local Rule 7(m), Covad would have known of the additional document production that was in the works. To date, Revonet has produced more than 40,000 pages of documents (compared to Covad's 5,000 page document production).

**native documents nor did it ever discuss same with Revonet.**    The first time Covad requested native documents was in this Covad's Motion to Compel, which is a clear violation of Local Rule 7(m) and thus, no consideration of this request is warranted.    Moreover, as Covad never requested native documents, Covad cannot compel production of same.    Likewise, Covad's request that Revonet be compelled to produce electronically stored documents in an electronic format must be denied.    Again, Covad never requested that documents be produced in an electronic format. Rather, Covad specifically requested "tangible" documents.    Absent a request for a specific format other than paper, Revonet was entitled to produce the documents in a reasonably usable format - - which Revonet did.    Indeed, Revonet used the same format for production that was used by Covad in producing the same type of electronically stored information.    As Revonet has produced the responsive electronically stored documents in reasonably usable forms, Revonet is not required to produce documents in another form.    As is set forth below, Revonet seeks an Order denying Covad's Motion to Compel and awarding Revonet its costs and attorney's fees incurred in defending the motion.

A.    **Covad's Request for Native Documents Must Be Denied As Native Documents Were Never Requested.**

Covad's Motion to Compel native documents must be denied because Covad has never requested native documents, nor is such production necessary.    The first time native documents have ever been discussed, let alone requested, was in Covad's instant Motion to Compel, which most certainly violates Local Rule 7(m) and warrants no further consideration by this Court. Notwithstanding the fact that Covad failed to address this issue with Revonet prior to filing its Motion to Compel, Covad's Motion must be denied because, absent a justified request contained in the Request for Production of Documents for native documents, native documents cannot be compelled.

This Court recently considered a similar motion to compel, with issues directly on point with the issues raised in Covad's Motion to Compel, and rejected a similar untimely request for native documents. *D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43 (D.D.C. 2008). In *D'Onofrio,* the requesting party instructed the respondent that, "[f]or any documents that are stored or maintained in files in the normal course of business, such documents shall be produced in such files, or in such a manner as to preserve and identify the file from which such documents were taken." *Id* at 47.  The Court held that a court will not compel that which has not been requested and that the language contained in the instruction did not include a specific direction that electronic documents should be produced in their native format. *Id.* at 48-49.  Therefore, the Court refused to compel production in its native format. *Id.*

In this case, Covad's First Set of Requests for Production of Documents included an instruction that Revonet, "[p]roduce all requested documents in your possession, custody or control, as they are kept in the ordinary course of business, including with all staples and clips attached and with all associated file folders, dividers and file labels."  With the exception of the substitution of "ordinary" for "normal," this instruction is virtually identical in form to the instruction from *D'Onofrio*, and substantively, it is identical.  Covad's instructions to Revonet do not include a specific direction that electronic documents be produced in electronic form and, as the plaintiff in *D'Onofrio*, Covad cannot rise above the request that it made by compelling Revonet to produce documents in a format it did not request.  See also *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556 (N.D. Ill. 2008)(holding, after documents had been produced in paper format, that it was too late to request metadata, and that courts will not compel production of metadata when the party did make it part of its original request.)

Covad's reliance on the Zortman Affidavit as a basis for requiring the production of native documents is misplaced and unpersuasive. First, as explained above, Covad never requested native documents or metadata. Second, Covad obtained the Zortman Affidavit <u>in 2007</u> but did not produce the Affidavit to Revonet until August 22, 2008 - - after Revonet made the August 2008 documents available. Covad had actual knowledge that Revonet had engaged a third party to assist in collecting and producing the emails and declined any involvement in the process. If Covad sincerely believed there was an issue with emails that required metadata, Covad, at the very least, should have requested native documents when the parties created the Joint Discovery Plan. It did not. Instead, Covad waited until <u>after</u> the time expired for identifying deficiencies with the 2007 responses and <u>after</u> Revonet incurred the substantial costs associated with producing the emails in the only format used by the parties before raising this issue.

Moreover, this purported "issue" with emails is nothing more than a red herring. A complete reading of Mr. Zortman's Affidavit reveals that Mr. Zortman claims that Revonet stripped information from leads prior to placing them in the *database*. Mr. Zortman does not claim that Revonet altered emails and sent the altered emails to third parties. Rather, Mr. Zortman merely claims that Revonet took information from inbound telephone calls and emails and entered redacted information into its database that left out any designation that Covad was the source of this lead. Accordingly, Covad's woefully delinquent blanket request that all electronically stored information be made available in its native form is not justified by Mr. Zortman's 2007 Affidavit. Moreover, Revonet has agreed to make the database, which contains all of the information relating to Mr. Zortman's Affidavit, available to Revonet in the form in which it is ordinarily maintained.

**B.    Covad's New and Untimely Request for Documents to Be Produced Electronically Must Be Denied.**

Similarly, Covad's Request that all documents be produced electronically must be denied as such request was not made by Covad in its Request for Production of Documents. Instead, Covad specified "tangible" documents to be produced and absent the specification for an electronic format, Revonet was permitted to produce documents in a reasonable usable format, which it did. Revonet cannot be compelled to reproduce the same documents in a different format. Accordingly, Covad's Motion to Compel documents to be produced electronically must be denied.

> *1.    Covad's Request for Production of Documents Specified "Tangible" Documents and Did Not Request Documents to Be Produced Electronically.*

Covad's First Set of Requests for Production of Documents did not request Revonet to produce any documents electronically. To the contrary, Covad defined the documents to be produced as "any tangible thing"[5] and instructed Revonet to produce documents with "staples and clips attached" evidencing Covad's intention that the documents be produced in paper form. Moreover, Covad never took exception to Revonet's paper document production in June 2007, which contained the very same type of documents produced in August 2008.

Per the Joint Discovery Plan, Covad had until July 8, 2008 to identify any deficiencies with regard to Revonet's document production and failed to timely provide any such objections. Even Covad's untimely August 18th letter setting forth Covad's objections to Revonet's responses to document requests failed to identify any concerns relating to the parties' mutual production in paper form. When Covad realized that Revonet had additional documents available, Covad first inquired as to the cost of making copies and then requested that Revonet

---

[5] See RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 2nd Ed. (1998)(defining "tangible" as "Capable of being touched").

12

give Covad its only copy of the set of responsive documents. It was only after Revonet refused to pay for Covad's copies that Covad requested TIFF's.[6]

Rule 34 of the Federal Rules of Civil Procedure, which governs the means of producing documents, provides in relevant part that a requesting party is authorized "to specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). Absent, however, a specific direction regarding the form in which electronically stored information should be produced, the responding party may produce such documents in a reasonably usable form. *D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43, *13-14 (D.D.C. 2008). Other than Covad's reference to "tangible" documents and "staples and clips", Covad did not specify any additional form for production and the form used by Revonet is a usable format.

### 2. *Revonet Has Produced the Documents in a Reasonably Usable Format - - the Very Same Format Used by Covad.*

Revonet produced its electronically stored information in a format that is reasonably usable. As a threshold matter, Revonet has already made its proprietary Federated Database available and it is this database that purportedly serves as the basis for Plaintiff's claims. With regard to the remaining documents, Revonet produced them in paper form and Covad is equitably estopped from arguing that Revonet's paper copies of these documents is not a reasonably usable format because Covad has produced the very same documents in paper format. Accordingly, Covad should not be heard to argue that the very format it has used for production is unusable. Furthermore, Revonet's August 2008 document production contains *more* information than the documents produced by Covad because Revonet's August 2008

---

[6] Because the second round of production involved more than 35,000 pages of documents, however, Revonet did not make an extra copy for Covad, nor was it required to do so. See eg. *Clever View Investments, Ltd. v. Oshatz*, 233 F.R.D. 393, 394 (S.D.N.Y. 2006)("[A] party need only make the requested documents available for inspection and copying; it need not pay copying costs").

production contains metadata at the bottom of the emails, unlike any document produced by Covad. (See eg.REV-II-0000378-000379 filed under seal as **Exhibit 7**).

Moreover, Covad has yet to review or inspect any of the documents that Revonet produced in paper format, so it is unable to accurately assert whether or not these documents are in a reasonably usable format.[7] Instead, it makes the blanket assertion that the documents must be produced in electronic format. Covad's sole support for its argument that the documents are not in reasonably usable form is the volume of the pages that Revonet has produced. This is a disingenuous argument as Revonet advised Covad in early 2008 that in collecting responsive documents, it had determined that a large number of documents were responsive and gave Covad the opportunity to make its request more specific so that only documents germane to the issues would be produced. Covad failed to respond to that offer, and yet now is attempting to use the number of pages produced as support for its contention that the documents are not in a reasonably usable format.

With regard to Revonet's Federated Database, Revonet previously objected to allowing Covad unfettered access to the database and instead offered to conduct searches on the database using queries created by Covad. Covad initially was unopposed to this proposal. Last month, however, for the very first time, Covad objected to this proposal. In good faith, Revonet agreed to make the portions of the database that are responsive to the request available for Covad's

---

[7] Covad's opening brief failed to mention the *D'Onofrio* case - - an case on point from this jurisdiction and instead relied on cases from outside of this District: *L.H. v. Schwarzenegger*, 2008 WL 2073958 (D. Cal. 2008) and *White v. Graceland*, 2008 WL 3271924 (D. Kan. 2008). In both cases, the courts made clear that Rule 34 does not mandate the production of documents as they are ordinarily maintained, but allows production in any form so long as it is reasonably usable. Neither court held that any time there is electronic discovery requested, it must be produced as ordinarily maintained because to so hold would be to ignore the plain meaning of Rule 34. Instead, the courts relied upon the requesting parties to demonstrate that the documents produced were not reasonably usable. Covad has not viewed the documents that have been produced by Revonet, so it cannot reliably contend that the documents as produced are not "reasonably usable." Further, Covad has been offered access to search the Federated Database, a specific segment of the document production that is searchable and sortable. Accordingly, Covad's reliance on those cases from outside this jurisdiction, as opposed to the *D'Onofrio* opinion - - from this jurisdiction - - is misplaced.

counsel to inspect and conduct searches in the manner in which the database is ordinarily maintained. Certainly direct access to the database is a usable form.

> 3.  ***Revonet Is Not Required to Produce Electronically Stored Information in More Than One Form.***

In accordance with Rule 34(b)(2)(E)(iii) of the Federal Rules of Civil Procedure, Revonet is not required to produce the same electronically stored information in more than one form. Further, a requesting party that has made no prior specification as to the format of the requested document production, cannot at a later time compel production in an alternate format when it has not previously objected to paper production, when it would cause significant cost and effort for the producing party, and when it has failed to demonstrate that such production is necessary. *Schmidt v. Levi Strauss & Co.*, 2007 WL 2688467 (N.D. Cal. Sept. 10, 2007). Revonet incurred significant expense in collecting and organizing the documents in response to Covad's Requests for Production and Covad had full knowledge that Revonet was engaging in this process and never objected to the form of discovery used by both parties. Now at the eleventh hour, Covad is attempting to assert, without the benefit of having viewed any of the documents available for inspection, that the documents must be produced electronically which would require Revonet to incur the burden and costs associated with redacting the privileged and non-responsive documents from TIFF copies. The law does not require Revonet to undertake this burden and expense.[8]

---

[8] Covad attempts to defend its position that it should not be obligated to pay for the additional form of production that it wants Revonet to provide, by contending that the producing party is required to bear the cost of production. In support of this position, it cites *Peskoff v. Faber*, 2008 WL 2649506 (D.D.C. 2008), in which this Court refused to shift the cost of a second form of production to the requesting party. In *Peskoff*, however, the Court held that the producing party had failed to take discovery seriously and it was only through actions or inactions that the additional form of discovery was necessary. *Id.* The recitation of the efforts that Revonet has taken to comply with discovery makes clear that it has in no way hindered production and it is Covad's failure to request documents in the specific format that it now demands that has led to this motion to compel. Therefore, it should bear the burden of a second form of production if it wants a second form of production. *Clever View Investments, Ltd.*, supra.

Further, Revonet has offered a reasonable alternative to Covad, which it has refused to consider. After Revonet rejected Covad's request for paper copies at no cost, Covad then requested TIFF's. In response to that request, Revonet offered to make the documents available in a TIFF format for review, provided Covad incurs the cost of this second production of the documents. Pursuant to the Section 12(d) of the Sedona Guidelines, it is reasonable that, should the production of the same information for a second time be required, the court should shift some or all of the cost of that second production to the requesting party if the originally request was unclear as to format or untimely. *The Sedona Guidelines: Best Practice Guidelines and Commentary for Managing Information & Records in the Electronic Age.* Covad has not embraced this option and instead filed this baseless Motion to Compel seeking, for the first time, *native* documents. As Covad never requested electronic documents in its discovery requests and the documents have been produced in a reasonably usable format, Covad's blanket request for this Court to compel production of electronic documents must be denied.

## III.  CONCLUSION

Covad's Motion to Compel should be denied. Covad never requested native documents until it filed its instant Motion to Compel which is a blatant violation of Local Rule 7(m) and the motion should be denied on that basis alone. Similarly, Covad did not request the discovery format that it now seeks to compel and Revonet produced the electronically stored documents in a reasonably usable format. Covad was satisfied with its own conduct in producing electronically stored information in paper format, as has been the course of conduct of both parties throughout discovery in this case, and yet now seeks to compel Revonet to produce in a different manner. Covad has conducted *no* investigation into what documents Revonet has actually produced, let alone whether they are in a reasonably usable format and Revonet should not be required to

produce electronically stored information in more than one format based upon Covad's unsubstantiated and blanket assertion that the documents need to be produced electronically. Based upon the foregoing, Covad's Motion to Compel should be denied and full costs and attorney's fees should be awarded to Revonet.

WHEREFORE, for the reasons stated herein, Defendant Revonet, Inc. seeks an Order denying Covad's Motion to Compel and awarding all costs and attorney's fees associated with Revonet's defense of this Motion to Compel.

Respectfully submitted,

_/s/ Jennifer S. Jackman_____
Jennifer S. Jackman (#466922)
Whiteford, Taylor & Preston L.L.P.
1025 Connecticut Avenue, NW
Washington, DC 20036-5405
(202) 659-6800
Attorney for Defendant,
REVONET, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of September, 2008, a copy of the foregoing was sent via hand delivery to:

Andrew M. Klein, Esq.
Klein Law Group
4800 Montgomery Lane
Bethesda, Maryland 20814

And via regular mail, postage prepaid to:

Michael D. McNeely, Esq.
2748 Stephenson Lane, NW
Washington, D.C. 20015

_/s/ Jennifer S. Jackman_
Jennifer S. Jackman

224366