UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COVAD COMMUNICATIONS COMPANY,<br><br>              Plaintiff,<br><br>    v.<br><br>REVONET, INC.<br><br>              Defendant. | Civil Action No. 06-01892 (CKK/JMF)<br><br>(Hon. Colleen Kollar-Kotelly/<br> Hon. John M. Facciola)<br><br>HEARING REQUESTED<br><br>Next Scheduled Event:<br>Fact Discovery Closes November 26, 2008 |

REPLY MEMORANDUM OF COVAD
IN SUPPORT OF MOTION TO COMPEL RESPONSES TO
REQUESTS FOR PRODUCTION OF DOCUMENTS

      Plaintiff Covad Communications Company hereby submits this reply to Revonet's Memorandum in Opposition to Plaintiff's Motion to Compel ("Memo in Opposition") and in further support of Covad's Motion to Compel Revonet's lawful production of documents.

      The Covad Motion and the accompanying Memorandum of Points and Authorities in Support of Motion of Covad Communications Company's Motion to Compel Responses to Requests for Production of Documents ("Memo in Support") seeks an Order compelling the production of some 35,000 pages worth of information in the native electronic format in which Revonet maintained them. Defendant's Memo in Opposition presents no grounds upon which to deny the Motion. Rather, it offers up a flawed analysis of the language of Covad's First Set of Requests for Production of Documents to Revonet, Inc. ("Document Request"), the erroneous recall of events related to the Document Request, and, most significantly, a transparently unavailing effort to avoid the plainly stated requirement that

1

Revonet produce electronic documents in the form in which "ordinarily maintained" or at the very least in a "reasonably usable form."[1]

In its Memo in Opposition, Revonet continues in its attempt to shield crucial discovery material from production in this case. Since Covad brought this action in light of Defendant Revonet's misappropriation and conversion of confidential, proprietary and trade secret information belonging to Covad, the information in Revonet's possession is critical to this case. Given the nature and volume of the information, the manner of Revonet's production is similarly critical.

While Covad's Document Requests undoubtedly encompass material that Revonet must produce electronically,[2] Revonet continues in its refusal to do so. Covad therefore respectfully renews its request that Revonet be ordered to fully respond to Covad's Requests for Production of Documents in accordance with the requirements of the Federal Rules and to reimburse Covad for the costs and attorneys' fees Covad has been forced to incur pursuing this relief.

Revonet's arguments in opposition to the Motion boil down to assertions that Covad did not ask for documents in native format, and that Revonet's proposal to produce 35,000 printed pages for inspection (as opposed to production of the electronic files from which they originated) constitutes "production" compliant with the Federal Rules. Revonet supports these positions with a selective, tortured reading of the Document Request, and inaccurate statements of fact and the course of communications between the parties. Once viewed in light of the true facts and applicable law, Revonet's opposition dissipates rapidly.

---

[1] F.R.C.P 34(b)(2)(E)(ii).

[2] The First Set of Requests for Production of Documents served by Covad on Revonet on April 27, 2007 ("Covad Document Request") is attached to the Memo in Support as Exhibit A.

2

## II. COVAD REQUESTED – AND REVONET ACKNOWLEDGED – PRODUCTION OF DOCUMENTS ELECTRONICALLY

Covad's Document Request properly encompasses electronically stored information. The definition of "Document" in the Document Request includes, *inter alia*, "any expression, communication, representation or data," whether handwritten, printed, "on a computer," or recorded.[3] Revonet was instructed to produce such material as "kept in the ordinary course of business[.]"[4] The information sought related, in large part, to Revonet's handling of competitively sensitive information belonging to Covad, which lies at the heart of this case.

Revonet responded to the Covad Document Request[5] with a very limited set of printed documents and the statement that "Revonet has retained the assistance of an outside consultant to assist in collecting electronic documents."[6] Revonet did not object in this response to the production of information as "kept in the ordinary course of business," nor did it indicate that these "electronic documents" would be produced in anything but the electronic format in which they were kept.

---

[3] Covad Document Request, Definition D. The definition goes on to state that the term "document" includes "computer tape, computer disk, computer printout, computer card, and all other writings and recordings of every kind[.]"

[4] *Id.,* Instruction A.

[5] The Revonet Document Response is attached to the Covad Memorandum in Support as Exhibit B.

[6] Revonet Document Response, at 1. Despite also promising to produce other documents "as soon as they become available," Revonet did no produce a single document until Covad filed the Motion – fifteen months after Revonet's June 15, 2007 statement. In this recent production, Revonet included documents apparently printed from electronic records and databases, most of which are useless without proper sorting and formatting. All of the documents are marked as "confidential," with the great majority also improperly marked as "attorneys eyes only."

Revonet now attempts to claim that Covad "never requested" native documents and did not request that documents be produced electronically.[7] This assertion is wrong on several counts.[8]

Defendant's focus on the definition of document is both flawed and misplaced. First, the definition establishes the scope of documents and information to be produced. Second, the scope as defined specifically includes information "on a computer," as well as "computer tape, computer disk, computer printout [and] computer card." Defendant's reference to "any tangible thing" in the definition ignores these numerous and specific references to data kept in electronic storage media. Defendant cannot seriously dispute that the verbiage of the Document Request advised Revonet that it must produce electronic documents.

Indeed, Defendant's own actions and words show that Defendant interpreted the Request in precisely that manner. As noted above and more fully described in Plaintiff's Memo in Support, Defendant's Document Responses (a) specifically note that documents responsive to Covad's requests include "electronically stored information from [Revonet's] Federated Database," and (b) acknowledge that Revonet's electronic documents were subject to production pursuant to the Document Request and stated that Revonet was taking steps to collect and produce them.[9]

---

[7] Revonet's Memo in Opposition, at 1.

[8] Upon review of the Revonet Memo in Opposition, and the material misstatements contained therein, the undersigned counsel immediately contacted and left voicemail messages for both counsel for Revonet (Drew Terrell and Jennifer Jackman) at 8:30 AM Monday morning, September 29, 2008, requesting that Revonet counsel correct such errors. In a conference call Monday afternoon, Revonet counsel Jennifer Jackman and Marla Diaz declined that request, and responded via letter Monday evening. By Substitution of Counsel filed with the Court Monday evening, Mr. Terrell withdrew as one of Revonet's counsel of record.

[9] *See* Memo in Support, at 6; Revonet Document Response, at 1; Revonet Supplemental Response, at 2. Revonet's Initial Rule 26 Disclosures also noted that Revonet possesses e-mails, databases, and other presumably electronic documents relevant to this action. (Revonet's Initial Disclosures, at 3).

Defendant was reminded in August, 2008, of its failure to produce discovery requested and promised more than one year prior. On August 20, 2008, Revonet counsel stated for the first time that it would finally produce the electronic documents referenced in Revonet's Document Response of June 15, 2007 – but insisted that such information be produced and reviewed only on paper at the office of counsel for Revonet.[10] Revonet counsel also advised at that time, for the first time, that the information being produced amounted to 35,000 printed pages. Contrary to Revonet's inaccurate recitation of events Covad counsel immediately objected to the Revonet tender. Indeed, by correspondence the very next day, Revonet was advised that Revonet's "insistence on yesterday's call that Covad accept production of paper documents for inspection and copying, rather than in the admittedly electronic form noted, seems calculated only to impose cost and delay on Covad."[11] Thus, in addition to the language in the Document Request itself, this letter clearly puts the lie to Revonet's claim that "Covad never requested that documents to be produced in an electronic format."[12]

Moreover, on a conference call between counsel for the parties and Judge Kollar-Kotelly on August 25, 2008, the undersigned counsel again raised the issue of Revonet's failure to produce documents in electronic format as required by the Federal Rules. Judge Kollar-

---

[10] Revonet's allegation that Covad was advised that "the additional documents" were available for review at counsel's office on August 4th is inaccurate. Rather, Revonet counsel's letter of August 4th addressed depositions – noting in fact that "we need to resolve the ongoing discovery issues prior to deposing these witnesses" – and simply added at the end, "[o]n another note," that it had some additional documents available for review.

[11] Letter from Andrew M. Klein and Michael D. McNeely to Jennifer Jackman, dated August 21, 2008, attached hereto as Exhibit A.

[12] Revonet Memo in Opposition, at 9; *see also,* Memo, at 1.

Kotelly remarked that if the documents are electronic, the Judge did not see why they would not be produced in that manner, and referred that issue to Your Honor.[13]

Following that call with the Court on August 25th, counsel for Revonet offered to look into producing the documents in an electronic TIFF format. This request most certainly did not come from Covad counsel as Revonet erroneously alleges, as neither of the undersigned had prior familiarity with TIFF documents. In fact, Revonet counsel even mentioned that the Revonet third-party consultant had supposedly created TIFF files of the documents, though she was not sure.[14] As such, Covad had not requested, much less agreed to accept, TIFF documents in place of properly formatted electronic documents required by the Federal Rules.

Finally, the Revonet Memo in Opposition further demonstrates the pitfalls in attempting to spin adverse facts. While Revonet alleges at footnote 2 that it would make TIFF "images" available for review "whenever and wherever counsel chooses, Revonet later in its Memo in Opposition admits that it only seeks to make the documents available "in a TIFF format for review." Most critically, however, is that fact that such TIFF files were never requested by Covad, and would not, as noted below, enable Revonet to meet its obligation under the Federal Rules.

---

[13] Following the conference call with Judge Kollar-Kotelly, an Order was entered referring this case to Magistrate Judge John M. Facciola for the disposition of all pending and future discovery-related motions pursuant to L.C.v.R. 72.2(a).

[14] Revonet counsel confirmed, in a letter sent late on August 25th, that Revonet would investigate production of the documents "in an electronic format." While generally irrelevant, Revonet's assertion (on page 7 of the Memo in Opposition) that Covad produced paper documents on August 22, 2008, *after* these events, is not possible since the above-noted events transpired on August 25th.

## II.  REVONET IS REQUIRED BY THE FEDERAL RULES TO PRODUCE RESPONSIVE DOCUMENTS ELECTRONICALLY

While Revonet inaccurately alleges that Covad had not properly requested production of electronic discovery, F.R.C.P 34(b)(2)(E)(ii) resolves this issue and requires such electronic production.  The Rule clearly provides that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."  Revonet's Memo in Opposition fails entirely to address this requirement.

Rather, Revonet's argument appears to be that production, for review, of 35,000 printed pages of electronically stored information is somehow compliant with some other, unstated rule.  As the Covad Memo in Support demonstrates, the production of paper versions of electronic documents cannot be regarded as production in a "reasonably useful form."[15]

Defendant cannot dispute that the rules and precedent require more than paper production of electronic documents. Instead, Defendant argues that in this case the chance to paw through 35,000 pages of unsortable, unsearchable paper in Revonet counsel's office is a sufficiently "usable" alternative to native or other electronic production.  As discussed in Covad's Memo in Support, this is unsustainable as a factual matter, since Plaintiff needs the opportunity to search and sort such information, and evaluate Revonet's handling of Covad's confidential information – handling that largely if not entirely involved the manipulation and storage of electronic documents.  Memo in Support at 6-7.  Indeed, Covad demonstrates that in this case, which involves allegations that Revonet stole Covad's confidential information through its handling, alteration and sale of information kept in electronic documents, production in native

---

[15] *Citing L.H. v. Schwarzenegger*, No. CIV S-06-2042 LKK GGH, slip. op. at 3 (E.D. Cal. May 14, 2008) and *White v. Graceland College Center for Professional Development & Lifelong Learning, Inc.*, No. 07-2319-CM, slip op. at 9-11 (D. Kan. Aug. 7, 2008).

format is required for the documents to be "reasonably usable." *Id.*

Revonet's recent production of some paper documents, moreover, illustrates just how useless the paper production that Defendant proposes will be. Inspection of those documents, a portion of which is being filed as Confidential Exhibit B, shows a sea of seemingly random numbers and data, with no labels, column headings or identifying information. Often it appears that what would in native form be individual spreadsheet pages are printed on several sheets of paper. Clearly, such documents are not "reasonably usable" within the contemplation of the Federal Rule.

In addition, as Plaintiff has shown, Defendant's proposed mode of production falls far short of the usability standard envisioned by the Federal Rules.[16] To summarize, the Advisory Committee explained that under Rule 34(b), "the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." *Id.* The *Schwarzenegger* and *White* decisions both rely on these Committee Notes to find that under Rule 34(b)(2)(E)(ii), paper production of electronic documents (including e-mails) does not measure up to the requirement of the Federal Rules.

Revonet also argues that Plaintiff is "estopped" from requesting electronic production because all of Plaintiff's document production has been on paper. This argument fails for several reasons. First, Plaintiff did not promise production of electronic information as Defendant did. Second, Defendant never objected to Plaintiff's mode of production, while Plaintiff repeatedly objected to Defendant's proposed production of voluminous, unusable paper.

---

[16] *See* Memo in Support at 8, *citing and quoting* Fed. R. Civ. P. 34(b) Advisory Committee Notes (2006 Amendments).

Most importantly, however, is the fact that the parties' positions differ as regards this issue, as electronic production in native format is vital to Plaintiff's ability to analyze the Revonet data and conduct that are central to the allegations in this case. Defendant can make no such claim with respect to its document requests.

While the admirably direct Federal Rule and Advisory Committee Notes directly support the relief requested in the Covad Motion, the relevant facts provide additional support and serve to further undercut the Revonet opposition. As noted above, Covad's Document Request did call for the production of electronic documents in their native form. Under F.R.C.P. 34(b)(1)(C), Plaintiff could specify the form in which Defendant was to produce documents, and here instructed Defendant to produce "all requested documents . . . as they are kept in the ordinary course of business." Document Request, Instruction A. Defendants were thus instructed that all documents, including electronic documents, were to be produced as kept in the ordinary course of business, which, for electronic documents, is production in their native format.

Revonet argues that the Court's decision in *D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43 (D.D.C. 2008) controls the interpretation of the above Instruction. Revonet's reliance on *D'Onofrio* is, however, misplaced for several reasons. In *D'Onofrio*, the Court considered an instruction in a document request that referred to "documents that are stored or maintained in files in the normal course of business." *Id.* at 47-48. (*citation omitted*). The Court interpreted that language, and in particular its use of the term "files," to refer to paper documents stored in physical files, and not as a call for the production of electronic documents in their original form.

While Defendant here argues that the language in Plaintiff's document instruction

is "virtually identical in form" to the above language from *D'Onofrio*, key differences are readily apparent. Unlike the situation in *D'Onofrio*, Plaintiff's instruction includes no general reference to documents "stored . . . in files" that might be construed as limiting the request to paper documents. While the instruction provides details on the method of producing paper documents where they are also responsive, there is no reason to treat that language as limiting the generality of the instruction to produce all documents as kept in the ordinary course of business. This distinction is even more clear given that the definition of documents specifically includes information "on a computer," as well as "computer tape, computer disk, computer printout [and] computer card."

Moreover, the *D'Onofrio* opinion involves an analysis under F.R.C.P. 34(b)(1)(C), which provides that a document request "may specify the form or forms in which electronically stored information is to be produced," since the plaintiff there argued that the request did specify a particular form of production. The Court held that it did not.

As noted above, however, this Motion proceeds under a different rule – 34(b)(2)(E)(ii) – which Revonet would prefer to ignore. This Rule, which applies specifically to electronically stored information, provides that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Thus, the issue from *D'Onofrio* is not equivalent, since Revonet has admitted to the existence of a great deal of electronically-stored information that is responsive to the Document Request, but has failed to produce such information either in the "form in which it is ordinarily maintained" or in any other "reasonably usable form."

In sum, contrary to Defendant's arguments, the Covad Document Request calls

for the production of electronic documents in native form. Even if it did not call for that specific form of production, Defendant remains obliged to produce electronic documents in that form, since that is the only "reasonably usable form" for that material.

### III.  REVONET'S OFFER OF ACCESS TO ITS FEDERATED DATABASE ADMITS THE POINT IN CONTENTION

While Revonet spends a dozen pages in its Memo in Opposition arguing that Covad had not requested and Revonet need not produce electronically stored information, Revonet then states that it has "produced its electronically stored information in a format that is reasonably usable." Memo in Opposition at 13. Revonet asserts that it has "already made its proprietary Federated Database available[.]" Memo at 13. Revonet also states that it has offered access to its database, that is "searchable and sortable," (Memo at 14) and that counsel for Covad can "conduct searches in the manner in which the database is ordinarily maintained." Memo at 15. Revonet concludes that "direct access to the database is a usable form." Memo at 15.

By these statements, Revonet admits to the relevant standards for production of electronically stored information – and acknowledges that its proffer of paper fails entirely to meet them. More specifically, Revonet admits that (a) it has electronically stored information, (b) such information is responsive to the Document Request and highly relevant to this action, (c) Revonet must provide access to the database, (d) Revonet's document production must be "searchable and sortable," (e) Revonet must produce electronically stored information in the manner and form in which it is ordinarily maintained, and (f) documents produced must be in usable form.

Revonet provides no facts, dates, or citations in support of these alleged offers of access to databases and electronically stored information, and Covad is unaware of any such

11

offers nor certainly Revonet's provision of any electronic discovery. Nonetheless, this appears to be a positive development, that should enable favorable resolution of the Motion without much, if any, further consideration.

WHEREFORE, Plaintiff Covad Communications Company respectfully requests that the Court order Defendant Revonet, Inc. to fully respond to Covad's First Set of Requests for Production of Documents in compliance with the requirements of the Federal Rules of Civil Procedure, within ten (10) days of said order, and to order Revonet to reimburse Covad for the costs and attorneys' fees Covad has incurred in preparing this motion and pursuing this relief.

Dated: October 3, 2008

                                      Respectfully submitted,

                                            /s/
                                    Andrew M. Klein (Bar No. 479417)
                                    Michael D. McNeely (Bar No. 943597)

                                    KLEIN LAW GROUP PLLC
                                    601 13th Street, N.W.
                                    Suite 1000 South
                                    Washington, DC 20005
                                    Tel: (202) 289-6955
                                    Fax: (202) 289-6997

                                    *Attorneys for Plaintiff*
                                    *Covad Communications Company*