# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
 )
**COVAD COMMUNICATIONS** )
**COMPANY,** )
 )
        **Plaintiff,** )
 )
        **v.** )     **Civil Action No. 06-1892 (CKK/JMF)**
 )
**REVONET, INCORPORATED,** )
 )
        **Defendant.** )
_____)

## MEMORANDUM OPINION

Now pending before the Court is <u>Revonet's Motion to Compel Discovery</u> ("MTC") [#44] and accompanying Memorandum in Support. The parties recently filed a joint stipulation [#89] in which Revonet withdrew some of its requests. It had been my hope that my resolution of other discovery issues in this case would obviate the need for judicial intervention in this instance – particularly because Covad insisted it could not respond to many of these discovery requests until it obtained the documents that were the subject of its own <u>Motion to Compel</u> [#43]. I resolved Covad's Motion to Compel in December, <u>see</u> <u>Memorandum Opinion</u> [#65], but Covad still has not responded to most of the discovery requests at issue.

### I.    Background.

Covad is a company that sells voice over internet protocol ("VoIP") services. In 2004, Covad hired Revonet to generate sales leads on Covad's behalf. The parties entered into a contract that forms the basis of the dispute in this case.

As part of its "Covad campaign," Revonet was involved in generating both inbound and

outbound sales leads.  Inbound leads began as inquiries that were fielded by Revonet from persons or companies who were interested in Covad services.  Revonet would determine whether the caller was someone that Covad would be interested in pursuing.  Revonet also generated outbound leads by calling people or companies and asking whether those entities would be interested in Covad services and whether those entities fit Covad's qualifying criteria.  Revonet obtained sources for the outbound calls from commercial list providers such as Dunn & Bradstreet.  All of these calls, inbound and outbound, were logged by sales associates into a database called the Federated Database.

In 2006, Revonet began a new campaign called the Gold campaign, which was an accumulation of all of the leads Revonet had found success with in the past, including some that were originally part of the Covad campaign.  Covad and Revonet disagree about whether Revonet was permitted to do this under the contract between the parties.  In addition to the dispute about the meaning of the contract, the parties quarrel about how much and what type of Covad data was used by Revonet in a manner that Covad argues is improper.

Discovery problems have plagued this lawsuit, with both parties hurling insults and accusations at each other.  This controversy centers on Covad's responses to Revonet's written requests for discovery.

Revonet has propounded: (a) two sets of interrogatories, (b) three requests for production of documents, and (3) requests for admissions.  It takes issue with Covad's response, or lack thereof, to each of these items.  Revonet also asked that Covad provide contact information for deponents and indicate whether those deponents were still employed by Covad.  Finally, Revonet seeks sanctions for Covad's alleged misconduct.

2

## II.    Analysis.

### A.    Interrogatories.

Federal Rule of Civil Procedure 33 provides that "[e]ach interrogatory must, to the extent

it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P.

33(b)(3).  The answer must be "true, explicit, responsive, complete, and candid."  Equal Rights

Center v. Post Props., Inc., 246 F.R.D. 29, 32 (D.D.C. 2007) (quoting Hansel v. Shell Oil Corp.,

169 F.R.D. 303, 305 (E.D. Pa. 1996)); see also U.S. ex rel. Pogue v. Diabetes Treatment Centers

of Am., 235 F.R.D. 521, 524 (D.D.C. 2006) (merely restating allegations insufficient to respond

to interrogatory).  However, because the responding party has a continuing duty to supplement its

answer, it is sufficient for a party to state that it is unable, at the time the answer is provided, to

provide the information requested but will supplement its answers as information becomes

available.  Id. at 33.  If an answer to an interrogatory is incomplete or evasive, the party seeking

discovery may move to compel an answer.  Fed. R. Civ. P. 37(a).  The party seeking discovery

has the burden of proving that the discovery response is inadequate.  Equal Rights Center, 246

F.R.D. at 32.

### *Identification of Records*

In its responses to Revonet's interrogatories, Covad repeatedly objects to Revonet's

questions on the grounds that they "request[], in whole or in part, information that it is

ascertainable from records in the possession of Defendant."  E.g., MTC at 11.  While Rule 33(d)

does permit a party to produce or identify business records in lieu of a narrative answer to an

interrogatory, that approach is inappropriate here for two reasons.

First, Covad is not answering the interrogatories by producing its own records and

3

directing Revonet to search for the answer in them.  It is referring Revonet to Revonet's internal

files.  This approach is not sanctioned by the Federal Rules of Civil Procedure.  They only permit

the responding party to answer an interrogatory by producing records from which the answer

responsive to the interrogatory may be derived, provided the burden of ascertaining the answer is

the same for both parties.  See Advisory Committee Note to 1970 Amendment to Rule 33 ("This

is a new subdivision . . . relating especially to interrogatories which require a party to engage in

burdensome or expensive research into his own business records in order to give an answer.  The

subdivision gives the party an option to make the records available and place the burden of

research on the party who seeks the information."); see also Pulliam v. Continental Cas. Co., No.

02-CV-370, 2003 WL 1085939, at *5-6 (D.D.C. Jan. 24, 2003) ("Under Rule 33(d), if an answer

to an interrogatory may be found in the business records *of the responding party* and the burden

of ascertaining the answer is substantially the same for the requesting party and responding party,

then it is a sufficient answer to specify the records from which the answer may be derived . . .")

(quoting Fed. R. Civ. P. 33(d)) (emphasis added).

Obviously, if Covad's approach was correct, propounding an interrogatory and getting an

answer would become a perfect circle.  If the responding party were permitted to say that the

answer to the interrogatory is to be found in the producing party's records then the process of

getting the information responsive to the inquiry would not move forward an inch.

Second, even if it were appropriate for Covad to answer the interrogatories by identifying

Revonet's files, it would be required to specifically identify the documents that contain the

answers.  DL v. District of Columbia, 251 F.R.D. 38, 48 (D.D.C. 2008).  Covad generally directs

Revonet to its own records on the interrogatory's subject matter; it is not as though Covad is

identifying specific documents or even categories of documents where the answer may be found.

Further, as I have noted before, interrogatories are not only an information gathering tool, but also an opportunity to require one's opponent to state its position on an issue in controversy in writing and under oath.  See Melius v. Nat'l Indian Gaming Comm'n, No. 98-CV-2210, 2000 WL 1174994, at *1-2 (D.D.C. July 21, 2000).  Revonet could certainly review its own files to look for information that supports Covad's claims, and I certainly hope it is taking that action, but it also has the right to hear from Covad what information Covad intends to use to support its claims.  Thus the fact that Revonet has access to the underlying facts of the case does not mean that it does not have the right to see which facts Covad deems important, and how Covad intends to use those facts to prosecute this lawsuit.

Moreover, if Covad does not have any such information, Revonet is entitled to know that as well.  Knowing that the responding party has no information about a particular contention prior to the responding party's production of the discovery demanded from her, establishes a fact that may be important, the very purpose of discovery.  If the responding party evades the question by telling the producing party to look in her own records, there is another perfect circle.  The question "what information do you now have in support of your claim?" is "answered" by the response that "you first tell me what information you have."  While such squabbling has its place in the schoolyard, it hardly comports with the obligation imposed by Rule 26(g)(1)(a) that an attorney's signature on a discovery response be a certification that "with respect to a disclosure, it is complete and correct at the time it is made."  Fed. R. Civ. P. 26(g)(1)(a).

*Interrogatory Nos. 2-5*

In Interrogatory Nos. 2-5, Revonet asks Covad for specific information regarding

allegations in its complaint.  Interrogatory No. 2 addresses Covad's contention that Revonet took

inbound leads, integrated them into the Federated Database and shared them with third parties.

No. 2 asks for:

> a.    the specific customer lead information Revonet took
> including the name, telephone number, address and other
> information obtained;
>
> b.    the date and manner in which the lead information was
> generated from Covad's advertising campaign;
>
> c.    the identity of the person who allegedly integrated the
> information into Revonet's Federated Database and the date
> thereof;
>
> d.    the specific Covad customer lead information allegedly
> shared with third parties, including the names, telephone
> numbers and addresses of the leads;
>
> e.    the date and manner in which the customer lead
> information was allegedly shared with third parties and to
> whom it was shared.

MTC at 10.  Interrogatory No. 3 addresses Covad's contention that Revonet improperly usurped

Covad's customer lead information and added Covad's proprietary VoIP leads to Revonet's

database of VoIP leads.  No. 3 asks for:

> a.    The specific customer lead information Revonet took
> including the name, telephone number and other
> information obtained;
>
> b.    the date and manner the customer lead information was
> generated and by whom it was generated;
>
> c.    the identity of the person who added the information into
> Revonet's Federated Database and the date thereof;

MTC at 13.  Interrogatory No. 4 addresses Covad's contention that Revonet sold Covad's

proprietary information to Covad's competitors.  No. 4 asks for:

     a.     the specific proprietary information that was sold;

     b.     to whom the information was sold;

     c.     the amount charged by Revonet for the information

MTC at 14.  Interrogatory No. 5 addresses Covad's contention that Revonet integrated Covad's

inbound leads into its database in violation of the parties' agreement and then used them to

generate outbound leads for other clients.  No. 5 asks for:

     a.     the specific customer leads allegedly integrated by Revonet
              into the Federated Database and the date they were
              originally generated;

     b.     the date and manner in which the customer leads were
              allegedly integrated into the Federated Database;

     c.     the identity of all the customers for whom Revonet
              generated outbound leads based upon Covad's inbound
              leads and the date those leads were generated.

MTC at 15.  Covad provided essentially the same answer to each of these four interrogatories:

     See the General Objections, *supra*.  In addition, Plaintiff objects to
     each subpart of this Interrogatory on the basis that each subpart
     requests, in whole or in part, information that is ascertainable from
     records in the possession of Defendant, namely Revonet's records
     of its handling of Covad's inbound leads and its activities to
     populate Revonet's databases.  The burden of obtaining that
     information would be greater for Plaintiff than for Defendant.

     Plaintiff further objects to each subpart of this Interrogatory on the
     basis that each subpart requests, in whole or in part, information
     that is ascertainable from the Complaint.  Notwithstanding and
     without waiving these objections, Plaintiff states as follows:

     In 2004, Covad implemented a marketing campaign consisting of
     certain advertising efforts.  These advertising efforts generated
     customer lead information by directing prospective customers of

VoIP services to contact Covad through toll free numbers and websites.  Pursuant to its agreement with Covad, Revonet agreed to screen and follow up with these prospective customers in an effort to convert them into actual customers for Covad starting in 2004.

A Revonet executive admitted to Covad that Revonet put Covad's inbound leads into its Federated Database and that Covad inbound leads had been monetized for other companies.

Covad has been informed that:

> A Revonet executive instructed Revonet employees to remove all information related to Covad from Covad's leads and download the altered Covad leads into a Revonet database.

> A Revonet employee named Michael integrated Covad's lead information into the Revonet database in this manner, on a nightly basis.

> A Revonet executive encouraged Revonet's employees to refer these leads to Covad's competitors and to refer them back to Covad as outbound leads.

> Revonet's practice was to pass Covad's inbound leads to Covad's competitors by referring those potential customers to the sales teams of those competitors.

> A Revonet executive attempted to actively conceal these activities and, when advised of concerns regarding these practices, directed Revonet employees to continue to do as he ordered.

> These activities were a regular practice at least in 2006.

As a result of these practices, Covad and its competitors often competed for business from the same potential customers, a potential customer that had been generated through Covad advertising and marketing campaigns and identified as an inbound lead.

A Revonet executive further admitted that Covad's inbound representatives were used for competitors' projects.  These representatives, however, were by contract to be used exclusively

to handle Covad's inbound leads.  There were at least two times
where a Revonet executive recommended that Covad increase the
number of inbound representatives because of capacity constraints.
Indeed, it appears that the Covad inbound team received a bonus
based on fees generated by Covad outbound dialed leads, XO
dialed outbound leads and Call Tower dialed outbound leads.

Revonet failed to perform under the agreement with Covad and/or
meet expectations with respect to the leads generated.

One or more Revonet employees failed to recommend Covad
products and services when directly solicited by one or more
potential customers for such products and services through a
Covad inbound 800 number.

Revonet categorized one or more Covad inbound leads as
outbound leads.

Revonet represented that it did not have records of Covad inbound
leads that did not become qualified; a Revonet executive later
admitted that this representation was not true.

Revonet developed and sold a new product called "Leads-On-
Demand" that apparently used Covad's inbound leads without
Covad's consent.

MTC at 11-12.  Revonet argues that Covad's answer is insufficient because it merely restates the

allegations in the complaint and does not provide the specific information that Revonet requests,

such as names, telephone numbers, addresses, etc.  Covad responds by saying the purpose of

discovery is for Covad to find answers to questions like those Revonet asks from what Revonet

produces in discovery or otherwise has in its files.  Covad also argues that it should not be

required to answer questions about Revonet's conduct when clearly Revonet is in a better

position to determine what it has or has not done.  Finally, Covad argues that it would be able to

answer the questions once Revonet's document production is complete.

While I agree with Covad that Revonet is likely better able to determine what it has or has

not done in this case, I also agree with Revonet's argument that Revonet's being in a better position to determine what happened does not relieve Covad of the obligation to answer the questions to the best of its ability. Revonet has a right to know what specific allegations Covad will seek to prove at trial so that it may properly defend itself. Covad's answer, while lengthy, does not address any of the legitimate specific questions that Revonet propounds.

Also, one of Covad's main defenses for the lack of specificity in the responses is that they had not received documents from Revonet. Yet, 35,000 documents have since been produced, but the interrogatories have not been supplemented in any way.

*Interrogatory No. 6*

Revonet defers its request for an answer to this interrogatory. <u>See</u> Joint Stipulation at 2.

*Interrogatory No. 7*

Interrogatory No. 7 seeks information about Covad's allegation that Revonet is continuing to use Covad's information illicitly. Revonet asks for the specific customer information and the dates and manner in which it is being used. Covad responds:

> After the termination of the agreement between Revonet and Covad, Revonet on several occasions stated to Covad that Revonet would consider "returning" Covad's inbound information to Covad. These leads have not been "returned" to Covad, and Covad is not aware that they have been removed from Revonet's databases.

MTC at 18. Presumably Covad means to allege that all of its customer information is still being used by Revonet because Revonet has not produced the leads. But, that Revonet still has the leads does not answer the question of what information Covad has that would tend to show that Revonet is still using the leads. Accordingly, Covad must supplement this interrogatory by

indicating specifically what information it has (if any) that Revonet is still using the leads.
Again, I note that Covad's stating truthfully that it has no such information advances the
discovery process and may be the proper answer.

*Interrogatory Nos. 8-10*

Interrogatory Nos. 8-10 request Covad's basis for claiming that Revonet breached the
2004, 2005, and 2006 contracts, respectively.  Revonet requests dates of the allegedly wrongful
conduct.  Covad responds by quoting what it calls the "Mutual Confidentiality and Data Use
Agreement," which it claims was part of all three contracts.  Covad then claims that Revonet
disclosed confidential customer information to other clients in violation of those provisions and
cites to its answer to Interrogatory No. 2 (reprinted above).  Covad also states that Revonet
breached the 2005 contract by failing to provide dedicated account representatives.  Covad does
not give any dates.

Covad must either state the dates on which the breaches occurred, if it knows them, the
specific manner in which the breaches occurred, and why it believes a breach occurred on those
dates.  Again, stating that it does not know, if truthful, may be the correct answer.  As to the 2005
contract, which contains a provision that is not found in the other two contracts, Covad must also
supplement its answer to indicate whether the alleged actions took place while the contract was
in effect, and indicate the basis for its contention.

*Interrogatory No. 11*

Revonet defers its request for an answer to this interrogatory.  See Joint Stipulation at 2.

*Interrogatory No. 13*

Interrogatory No. 13 asks Covad to identify all initial meetings scheduled by Revonet for

Covad and indicate whether the meeting was attended. Covad does not answer the interrogatory except to reserve its right to supplement and object on the grounds that I have already rejected. Thus, Covad must answer this interrogatory now.

*Interrogatory No. 17*

Interrogatory No. 17 asks Covad to identify the people who may have information about the lawsuit. Covad responds with a list of names. Revonet argues that Covad should have identified the individuals in accordance with the definition of "identify" in the request for production of documents, which includes full name, present or last known home and business address, present position, business affiliation, and job description or last known, if current information is unavailable. Revonet says it needs this information to facilitate contacting the individuals for depositions if necessary. Covad responds that it shouldn't have to provide that level of detail because Revonet did not provide that information in response to a similar interrogatory. I have admonished these parties before that it is of no moment to me that Revonet allegedly gave inadequate answers; the adequacy of Revonet's answers is not before the Court and Covad is not justified in providing insufficient answers just because Revonet did. If Covad was dissatisfied with Revonet's response, it should have sought relief from the Court. Because Covad offers no legitimate reason why it didn't answer the interrogatory fully, I will order that it do so.

*Second Set of Interrogatories*

Covad has not responded to Revonet's second set of interrogatories, or objected to them, and seeks to justify this behavior by arguing that Revonet has not fulfilled its discovery obligations either. Again, I find this argument unpersuasive and will therefore order Covad to

respond fully to Revonet's interrogatories.

*Timing*

Because Covad's answers are insufficient in that they do not answer the questions asked, I will order that they be answered fully within 10 days.  If Covad currently does not know the answer to these questions, it must so state.  Also, I remind both parties of their continuing obligation to supplement their discovery responses as more information comes to light.  I expect that many of these answers will require supplementation to include the the results of the forensic analyses that I have ordered.

## B.   First Request to Produce Documents.

Revonet has withdrawn or deferred its requests regarding its First Request to Produce Documents, but seeks an order compelling Covad to provide a written statement indicating that it has produced all documents responsive to request nos. 4, 11, 13, 19, 20, 21, 22, 24, 25 and 31-39. Covad shall either produce any documents it has that are responsive to these requests and have not been produced, or provide the written statement as requested.

## C.   Second Request to Produce Documents.

Revonet initially sought written responses to its Second Requests for Production as well as a privilege log but has since withdrawn those requests.  Revonet never sought production of documents in response to this request in its Motion to Compel.  Accordingly, it is my understanding that this request is withdrawn completely.

## D.   Third Request to Produce Documents.

Covad never responded to Revonet's third request for documents other than to indicate at one point that it intended to produce documents on a certain date.  It did not produce those

documents or tender objections.  In its opposition, Covad merely states that it is willing to participate in discovery when Revonet participates in discovery.  Paradoxically, Revonet produced its electronic documents in accordance with my previous opinion months ago, but Covad apparently has not reciprocated.  I have already discussed my view that Covad is not justified in withholding documents because it feels that Revonet has done the same. Accordingly, I will order that Covad fully respond to Revonet's request for production.

### E.   Requests for Admissions.

In lieu of a response to several requests for admissions, Covad stated that it was conducting a further inquiry and would either admit or deny the request upon completion of that inquiry.  It has been over six months since Covad made that statement and, I must conclude that Covad has had sufficient time to determine whether it is willing to authenticate a series of contracts or not.  Accordingly, Covad shall supplement these responses within 5 days of the date of this opinion with one of the responses permitted by Rule 36(a)(4) of the Federal Rules of Civil Procedure.

### F.   Information About Deponents.

Covad gives no legitimate justification for its failure to provide information about deponents, and so I will order that Covad provide that information.

### G.   Consequences.

The Federal Rules of Civil Procedure clearly proscribe consequences for failures to comply with the rules pertaining to discovery.

Revonet invokes those rules seeking costs and attorneys fees it incurred in attempting to secure responses to these various discovery requests. It also demands that Covad be deemed to

14

have waived any objections it will make once it responds to Revonet's requests pursuant to the Order I will issue.

### 1.    Attorney Fees

Covad argues that Revonet was responsible for the delay and Covad should not be penalized.  Covad argues that it was engaging in a good faith attempt to force its opponents to produce a set of electronic documents and so decided to completely remove itself from the discovery process.  It is not surprising, considering that strategy, that this case has been in discovery for years and little or no actual discovery has taken place.  I certainly do not wish to condone the sort of vigilante sanctions that Covad has unilaterally imposed on Revonet in this case.  I also remind Covad that, while I ruled in its favor on its Motion to Compel documents from Revonet, Revonet's position that it had complied with its discovery obligations was not frivolous, but a legitimate legal controversy.  If Covad wanted to expedite the discovery process so badly, it should have sought court intervention sooner rather than refusing to participate in the process.

Further, Covad's repeated assertions that it was merely withholding items until it received its due have been called into question by its behavior in recent months.  I decided Covad's Motion to Compel in December, and intentionally withheld decision on this motion to give Covad the opportunity to do as it so fervently claimed it would, and render the objections voiced in this motion moot.  Nearly five months have elapsed since I settled the controversy regarding the adequacy of Revonet's production and it appears nothing has happened.  Under those circumstances, I find it difficult to believe Covad's insistence that it is entirely without fault.

For those reasons, I will, in accordance with Rule 37(a)(5)(A) order that Covad show

cause why it should not pay the reasonable costs and attorneys fees that Revonet incurred in preparing and filing this motion.

## 2.    Interrogatories and Requests to Produce

"A failure to file a timely objection to interrogatories constitutes a waiver of any objection unless good cause is shown.  Fed. R. Civ. P. 33(b)(4).  Without a showing of good cause, defendant's failure to respond to the interrogatories ordinarily compels the conclusion that the untimely objection is waived."  Byrd v. Reno, No. 96-CV-2375, 1998 WL 429676, at *4 (D.D.C. Feb. 12, 1998).[1]  While Federal Rule of Civil Procedure 34, pertaining to requests for production of documents does not contain a similar waiver provision, "there is no reason to give it a dissimilar interpretation.  To the contrary, the federal courts have held that a failure to file an objection to a request for production of documents may be deemed a waiver."  Id.; see also Paul W. Grimm, Charles S. Fax & Paul Mark Sandler, Discovery Problems and Their Solutions, 244 (2005).

## 3.    Requests for Admissions

Rule 36(a)(3) provides that a request for admission is deemed admitted "unless within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or attorney."  Fed. R. Civ. P. 36(a)(3).

## 4.    Procedure

In this case, it is at this point unclear whether Covad will assert any objections to any of

---

[1] Accord Huthnance v. District of Columbia, 255 F.R.D. 285, 287 (D.D.C. 2008); Myrdal v. District of Columbia, No. 05-2357, 2007 WL 1655875, at *3 (D.D.C. June 7, 2007); Fonville v. District of Columbia, 230 F.R.D. 38, 42 (D.D.C. 2005).

the discovery that I am compelling.  Therefore, whether any hypothetical objections have been

waived is unclear, particularly in light of the fact that waiver can be overcome by a showing of

good cause.  If Covad asserts no objections, the point is moot.  Accordingly, the Order I am

issuing provides a schedule pursuant to which I will permit the parties to brief whether any

objections Covad does make should be deemed waived and whether it should be deemed to have

admitted any request for admissions to which it objects.  I caution Covad, however, that I will not

conclude that withholding discovery to try and force Revonet's hand constitutes "good cause,"

and I will not look kindly on yet another brief filled with allegations about the opposing party's

malfeasance.  That is a subject on which I am already well versed.

### III.    Conclusion.

For the reasons discussed herein, <u>Revonet's Motion to Compel</u> [#44] will be granted.  An

Order accompanies this Memorandum Opinion.


Date:   May 29, 2009                                            _____/S/_____
                                                                                        JOHN M. FACCIOLA
                                                                                        U.S. MAGISTRATE JUDGE