UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**COVAD COMMUNICATIONS**            )
**COMPANY,**                        )
                                    )
       **Plaintiff,**   )
                                    )
       **v.**           )    Civil Action No. 06-1892 (CKK/JMF)
                                    )
**REVONET, INCORPORATED,**          )
                                    )
       **Defendant.**   )
_____ )

**MEMORANDUM OPINION**

**I.     Introduction**

This case has been referred to me for management of discovery. Discovery in this case has been most fractious, yielding several opinions[1] and orders and some of the latter have granted or denied sanctions.

In September, 2008, both parties to this litigation filed motions to compel responses to written discovery requests. I resolved Covad Communications Co.'s ("Covad") Motion to Compel [#43] on December 24, 2008. Covad Commc'ns Co. v. Revonet, Inc., 254 F.R.D. 147, 151 (D.D.C. 2008). Covad has now filed its Motion of Plaintiff Covad Communications Company to Compel Compliance with the Court's Order of December 24, 2008, and Applicable Law Requiring E-Discovery, and Statement of Points and Authorities in Support [#100]

---

[1] Covad Commc'ns Co. v. Revonet, Inc., No. 06-CV-1892, 2009 WL 2488064 (D.D.C. Aug. 17, 2009); Covad Commc'ns Co. v. Revonet, Inc., No. 06-CV-1892, 2009 WL 151567 (D.D.C. May 29, 2009); Covad Commc'ns Co. v. Revonet, Inc., — F.R.D. —, No. 06-CV-1892, 2009 WL 1472345 (D.D.C. May 27, 2009).

("Motion").

## II. The Parties' Contentions

Covad advances several arguments and some deal with the adequacy of Revonet's response to Covad's Request for Production of Documents and of its initial and subsequent e-mail searches. It also argues that Revonet has never even produced the documents specified in Revonet's initial disclosures. Covad's other arguments deal with the format of the information it has received and with a discrepancy between certain e-mails they have now received in native format and e-mails that were initially proffered in hard copy.

## III. "Format" and "Completeness"

It is important to appreciate that the differences between the parties can be categorized as either ones of format or of completeness. "Format" speaks to the manner in which the information was produced, and the controversy focuses on the requirements of my December 24, 2008 Order as to the format of (1) the 35,000 pages Revonet proffered in hard copy prior to the Motion to Compel [#43] being filed; (2) the 2,832 pages of documents originally produced in hard copy while the Motion to Compel was pending; and (3) any other information that has been produced since my December 24, 2008 Order or will be produced in the future.

"Completeness" speaks to whether Revonet has produced, in whatever format, information that has been demanded by Covad.

## IV. Recent Developments

In its Reply Memorandum of Covad in Support of Motion to Compel Revonet's Compliance with the Court's Order of December 24, 2008 [#109] ("Reply"), Covad argues that (1) only a subset of all the documents that should have been produced in response to the original

44 Requests to Produce Documents have been produced, (2) the e-mail search, no matter what it produced, was not designed to find the relevant e-mails because of the narrow and under-inclusive search terms that were used, (3) the litigation hold and search term documents have never been produced in electronic format, and (4) Revonet has not produced many of the documents identified in its own initial disclosures.

To the extent it dealt with the completeness of Revonet's responses to Covad's Request to Produce, the September 24, 2008 Motion has largely been overtaken by the May 27, 2009 Order that imposed a detailed forensic search of certain depositories of electronically stored information. See Covad Commc'ns Co. v. Revonet, Inc., — F.R.D. —, No. 06-CV-1892, 2009 WL 1472345 (D.D.C. May 27, 2009). I have recently ordered the parties to appear before me to discuss the expected submission of the report of the results of the search. Those results may cast an important light on whether it is appropriate to compel any additional information from Revonet as Covad demands. Moreover, those results will bear on whether the further compulsion of information, even if relevant, can be justified under the balancing of the factors identified in Rule 26(b)(2)(C) that include, of course, (i) whether the discovery is "unreasonably cumulative or duplicative," and (ii) whether the party seeking discovery "has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). Thus, I will not speak to the completeness of Revonet's production of information in response to Covad's Request for Production of Documents or its search for e-mails in this Opinion.

However, because these allegations were raised in a Reply Memorandum, the Local Rules did not permit Revonet to respond, and the allegations stand on the record unanswered. Letters attached to a subsequent filing indicate, however, that there have been significant subsequent

3

productions by Revonet.  See Letters of Carol Elder Bruce, Esq. to Andrew M. Klein, Esq. (June 11, 2009 & July 10, 2009), Exhs. B & C to Defendant Revonet Inc.'s Motion to Quash Subpoena [#118].  Given that discovery efforts appear to be ongoing, I will require Revonet to answer the following questions regarding some of Covad's allegations with the understanding that I will deem Revonet's answers to be certified pursuant to Rule 26(g)(1) of the Federal Rules of Civil Procedure:

    1.    Is it Revonet's position that its production to date satisfies all the demands made of it by Covad's Request for Production of Documents?

    2.    Will Revonet produce what Covad calls the litigation hold and search term documents in native format?

    3.    Does Revonet consider itself bound, by either the Requests for Production or by some agreement with counsel to produce the litigation hold and search term documents?  If not, why not?

    4.    Has Revonet produced or will it produce the items that Covad argues were identified in Revonet's initial disclosures?

I appreciate that Covad has also raised the question of the adequacy of the search for e-mails.  As explained above, I think that questions pertaining to the initial search for e-mails may be rendered moot by the results of the forensic search and I will not consider any questions pertaining to that search until the results of the search are received.  In the meanwhile, I would ask that Revonet's answers to my questions be a neutral statement of facts and not another adversarial document; I have had enough of those.  After I see the response, I will decide whether I will direct Covad to respond or hold a hearing to resolve the issues that remain.

### V.      Discrepancy Between Hard and Electronic Copies

Covad argues that Revonet has not complied with my Order to produce e-mails in their native format. While there is some discrepancy, which I will address below, regarding the applicability of my Order to documents other than the 35,000 pages that Revonet made available to Covad in hard copy, neither party can dispute that my Order, at a minimum, required Revonet to produce those 35,000 pages in native format. Covad now argues that Revonet has not produced all of those documents. In its Opposition to Covad's Motion to Compel, Revonet concedes an unspecified discrepancy between the e-mails produced in a .pst file in January, 2009 and the 35,000 printed pages that Revonet previously proffered as its e-mail production in August, 2008. <u>Defendant Revonet Inc.'s Opposition to Plaintiff Covad Communications Company's Motion to Compel</u> [#104] ("Opp.") at 3 n.4. While the nature of the discrepancy is not explained, I have to assume that fewer e-mails have been produced in native format than were produced on paper. Revonet explains that the platform that Revonet originally used to search for documents was only capable of exporting documents to an HTML format. Thus, Revonet had to use a different platform to obtain .pst files and therefore could not re-run the original search exactly. <u>Id.</u> This may explain the discrepancy. Neither party provides information about the magnitude of the discrepancy, however, largely because Revonet claims that it would be too burdensome for it to cross-reference the electronic documents against the hard copies to determine how many and which e-mails are missing. <u>Id.</u>

While I appreciate that it would be difficult for Revonet to go back through its papers to determine whether all of the documents contained therein have since been produced and that Revonet's present counsel did not supervise or conduct the August, 2008 search for e-mails, I

also appreciate that it is a burden of Revonet's own making. Covad should not be penalized by Revonet's failure to maintain its discovery materials in some sort of organized fashion or keep some record of its own actions in this lawsuit. Wyeth v. Impax Labs., Inc., 248 F.R.D. 169, 171 (D. Del. 2006) ("[P]roducing party must preserve the integrity of the electronic documents it produces. Failure to do so will not support a contention that production of documents in native format is overly burdensome.").

More to the point, I have already resolved the issue of whether, on balance, Revonet should be required to produce the 35,000 pages in native format, and I have not seen any new information that causes me to revisit my conclusion on that point. Obviously, I contemplated that the e-mails be produced in native format; I was not granting a license to produce fewer e-mails in native format than were produced in hard copy. Hence, Revonet is going to have to produce the missing e-mails.[2]

## VI.   Format of Other Productions

Covad also argues that my Order should be read to state that all documents that are responsive to its First Request for Production of Documents must be produced in their native format.

The context of the parties' negotiations and discussions is everything. Covad's prior counsel served on Revonet's prior counsel Plaintiff Covad Communications Company's

---

[2] I am hopeful that Revonet and its outside vendor may be able to devise a less time consuming means to cross-reference the HTML and .pst results, alleviating the difficulty of comparing the hard copies one by one with the e-mails in .pst format. If Revonet cannot, it may ask me to reconsider this Opinion or, better, suggest some other means of resolving the difficulty presented by there being fewer e-mails in the electronic production than there were in the hard copy production.

First Set of Requests for Production of Documents. As noted above, Covad filed a Motion to Compel responses to those Requests in September, 2008 that I granted by my Order of December 24, 2008. Covad reads that Order, which required that documents produced subject to it be produced in native format, see Covad, 254 F.R.D. at 151, to pertain to all the electronically stored information that it demanded be produced by its Request for Production. Covad therefore reads the Order to require re-production of two sets of electronically stored information: (1) the 35,000 e-mails that Revonet had initially produced in paper form, and (2) 2,832 pages of other documents. Motion at 4. The latter group were given to Covad in paper format with a note attached. According to Covad, "these documents were useless because they were mostly paper printouts of spreadsheets that run horizontally across several sheets of paper, resulting in a sea of seemingly random numbers and data, with no effective labels, column headings, or other identifying information." Id. at 5.

Covad's counsel, having been told that he "could paste these hundreds of pages together," id., advised counsel for Revonet that my December 24, 2008 Order required this information to be produced electronically but, according to Covad's counsel, was met with the refusal to "redo the entire document production electronically." Id. (quoting E-mail from Carol Bruce, Esq. to Andrew Klein, Esq., Exh K to Motion). Instead, Revonet asked Covad's counsel to prioritize the documents at issue and Covad did so, identifying 148 for what he thought would be immediate electronic production. However, Revonet only agreed to produce those documents it could identify from the paper copies originally given; Covad's counsel said that months have gone by and he has not been given one of them. Id. at 5-6.

Revonet indicates that it will produce the 148 documents that were the source of the

controversy that led to the May 1, 2009 meet and confer in native format. Id. at 8. But, Covad protests that the 148 documents are a small subset of the 2,832 that were produced in hard copy with the invitation that they be pasted together. As discussed above, subsequent documents indicate that the parties are still working to resolve this dispute. Thus, lest I rule on an issue that has become moot, I will require Revonet to answer the following questions regarding the 2,832 documents:

1. Have the 148 documents that Revonet agreed to produce now been produced in native format?

2. Will Revonet produce the other 2,832 documents to which Covad refers?

I must note that, while I hope it has already been accomplished, documents that were originally created in an electronic format (which must be the vast majority, if not all, of them) must be produced in an electronic format that is "the form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34 (b)(E)(ii). I have already determined that Covad did not effectively specify the form in which it wanted electronic documents to be produced. See Covad, 254 F.R.D. at 149-50. It is equally apparent that these documents were not produced in the form in which they are "ordinarily maintained." See Fed. R. Civ. P. 34(b)(E)(ii). The Advisory Committe notes to the 2006 "electronic discovery" amendments state:

> The rule does not require a party to produce electronically stored information in the form it which it is ordinarily maintained, as long as it is produced in a reasonably usable form. But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting

> party to use the information efficiently in the litigation. If the
> responding party ordinarily maintains the information it is
> producing in a way that makes it searchable by electronic means,
> the information should not be produced in a form that removes or
> significantly degrades this feature.

Fed R. Civ. P. 34, Advisory Committee's Note to the 2006 Amendment.

The cases interpreting Federal Rule of Civil Procedure 34[3] conclude that it is therefore improper to take an electronically searchable document and either destroy or degrade the document's ability to be searched. See, e.g., Dahl v. Bain Capital Partners, Inc., No. 07-CV-12388, 2009 WL 1748526, at *3 (D. Mass. June 22, 2009) (requiring production of spreadsheets in native format); In re Classicstar Mare Lease Litig., No. 07-CV-353, 2009 WL 260954, at *3 (E.D. Ky. Feb. 2, 2009) (production may not degrade searchability); Goodbys Creek, LLC v. Arch Ins. Co., No. 07-CV-947, 2008 WL 4279693, at *3 (M.D. Fla. Sept. 15, 2008) (same; conversion of e-mails from native to PDF not acceptable); White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, 586 F. Supp. 2d 1250, 1264 (D. Kan. 2008) (same); L.H. v. Schwarzenegger, No. 06-CV-2042, 2008 WL 2073958, at *3 (E.D. Cal. May 14, 2008) (same); United States v. O'Keefe, 537 F. Supp. 2d 14, 23 (D.D.C. 2008) (applying principle in criminal case).

Understandably, taking an electronic document such as a spreadsheet, printing it, cutting

---

[3] Admittedly, the document requests at issue were propounded prior to the effective date of the amended rules pertaining to electronic discovery, December 1, 2007, but, the amendments had been in effect for almost a year prior to Revonet's tender of these 2,800 pages and there was a pending motion to compel production of documents in native format at the time the production was made. Thus, while it is true that courts were more amenable to permitting paper production under the old version of the rules, e.g., Schmidt v. Levi Strauss & Co., No. 04-CV-1026, 2007 WL 2688467, at *1-2 (N.D. Cal. Sept. 10, 2007), Revonet cannot argue that it was unaware that Covad would contest the adequacy of its paper production at the time the production was made.

it up, and telling one's opponent to paste it back together again, when the electronic document can be produced with a keystroke is madness in the world in which we live.

Covad has also moved for sanctions and I reserve judgment on that point pending further developments.

**CONCLUSION**

For the reasons stated herein, action on Covad's Motion to Compel will be stayed pending Revonet's answers to the questions I have posed. Revonet shall file its responses with the Court within 10 days. An Order accompanies this Memorandum Opinion.

Date: August 25, 2009

/S/
JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE