## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COVAD COMMUNICATIONS
COMPANY,

        Plaintiff,

        v.

REVONET, INC.,

        Defendant.

Civil Action No. 06-1892 (CKK/JMF)

## MEMORANDUM OPINION

Pending before me are nine discovery motions that are awaiting resolution. Three of these motions relate to plaintiff's claims that spoliation occurred, and the outcome of the motion for sanctions because of the spoliation may have a dispositive effect on the case. I will not address defendant's Motion for Protective Order Regarding the Forensic Copying and Searching Described in the Court's Order of May 27, 2009 [#140], plaintiff's Motion for Sanctions for Revonet's Spoliation of Evidence [#146], and defendant's Motion to Compel Expert Communications [#169] in this opinion. Nevertheless, I will address the remaining six motions: Motion of Plaintiff Covad Communications Company to Compel Compliance with the Court's Order of December 24, 2008 and Applicable Law Requiring E-Discovery [#100] ("Covad's MTC"); Defendant Revonet Inc.'s Motion for Sanctions [#110] ("Rev's Mot. for Sanctions"); Defendant Revonet, Inc.'s Motion to Quash Subpoena *Duces Tecum*, or in the Alternative, for a Protective Order Under Rule 26(c) Preventing Discovery [##118 & 119] ("Rev's Mot. for Protect. Order"); Defendant Revonet's Motion to Compel [#120] ("Rev's MTC"); and Defendant Revonet, Inc.'s Fee Petition in Accordance with Court's August 17, 2009 Order

[#137] ("Rev's Fee Petition").  I can do so now because the resolution of these motions may not

be affected by the resolution of the spoliation motion.  While I cannot be perfectly certain that

this is so, I simply must resolve as many of the outstanding motions as I can to clear the way for

what I can only hope will be the conclusion of discovery.

## I.  Background

The procedural history of the case has been provided in great detail in previous opinions.

See Covad Commc'ns Co. v. Revonet, Inc., 258 F.R.D. 17, 19 (D.D.C. 2009) (hereinafter Covad

IV).  Covad is a company that sells voice over internet protocol ("VoIP") services, and, in 2004,

it hired Revonet to generate sales leads on its behalf.  Id.  Revonet generated both inbound and

outbound sales leads for Covad.  Id.  Inbound leads began as inquiries fielded by Revonet from

persons or companies who were interested in Covad's services.  Id.  Outbound leads were

generated by calling people or companies and asking whether those entities would be interested

in Covad services if they met Covad's qualifying criteria.  Id.  Both the inbound and outbound

calls were logged by Revonet sales associates into a database called the Federated Database.  Id.

In 2006, Revonet launched a new campaign that aggregated all of its past successful

leads, including some that were part of the Covad campaign.  Id.  Covad claims that Revonet was

not permitted to do this under the contract between the parties.  Id.  To say that "discovery

problems have plagued this lawsuit" would be a gross understatement.  See id.

Both parties have filed numerous motions for the failure of the other side to follow the

discovery rules.  I have ruled on some of the disputes that have arisen, but each time I rule, the

parties continue to have more difficulties, and more discovery motions are filed.  I have held

numerous status conferences and ordered joint status reports to be submitted, detailing the status

of issues that are the subject of pending motions and outstanding issues that may require judicial

intervention.  The parties have submitted the status reports and presented arguments at a motions

hearing held on November 30, 2009.  I will address each pending motion in turn, and then

address steps moving forward to resolve any remaining disputes.  The elephant in the room, of

course, is a spoliation motion filed by plaintiff, which I currently have under consideration.

Because the resolution of the spoliation motion may have a dispositive effect on the case, I wish

to clear the slate of all disputes that I can, before reaching the ultimate issue regarding the

alleged spoliation.

## II.  Covad's Motion to Compel

The first motion pending before me is a motion to compel compliance with an order that

I issued on December 24, 2008.  See Covad Commc'ns Co. v. Revonet, Inc., 254 F.R.D. 147

(D.D.C. 2008) (hereinafter Covad II).  Covad had served its First Set of Requests for Production

of Documents on April 27, 2007, and Revonet responded on June 15, 2007 with a limited

number of hard copy documents.  Revonet represented that counsel needed the assistance of an

outside consultant to collect electronic documents and that other responsive documents would be

produced as they became available. Covad II, 254 F.R.D. at 148.  On August 4, 2008, Revonet

sent a letter to Covad, advising Covad that it had additional responsive documents available for

inspection and copying, and Covad demanded that the documents be produced by August 22,

2008. Id.  "In an August 20, 2008 conference call, Revonet stated that it would make the 35,000

pages of e-mails that are responsive to Covad's request available in hard copy at Revonet's

office for inspection and copying." Id.  Covad wanted the e-mails produced in native format,

and, on September 3, 2008, Revonet agreed to make the e-mails available as TIFF files, on the

condition that Covad pay the fees for a privilege review and for the search of non-responsive

documents from the electronic production set. Id.  Covad refused that offer.

As matters then stood, Revonet had taken the e-mails that could have been easily produced in native format and printed out all 35,000 pages for no apparent reason other than to make searching their content much more difficult than it would have been had they been produced in native format.  Obviously, Revonet could not pretend that it converts every e-mail it received or sent into a printed version and saves the printed version.

Covad filed a motion to compel the e-mails in native format, but Revonet argued that Covad never specified the format in which it wanted the production of the e-mails. Id.  I determined that "though Covad's instruction is hopelessly imprecise and Revonet could colorably argue that it should be interpreted to include several different formats, no reasonable person can honestly believe that hard copy is one of them." Id. at 150.   I ordered Revonet to produce the e-mails in native format. Id. at 151.

Covad has now filed its Motion of Plaintiff Covad Communications Company to Compel Compliance with the Court's Order of December 24, 2008 and Applicable Law Requiring E-Discovery, claiming defendant has failed to comply with my December 24, 2008 order. Pls. MTC at 3.  Covad distinguishes between two categories of the documents it seeks: (1) e-mails that Revonet produced only in paper format; and (2) responsive documents referenced, but not produced by Revonet, which I will call the non-e-mail documents. Id. at 3.  According to Covad, Revonet produced some external e-mails in an electronic format on January 23rd, February 17th, and May 1st, 2009. Id. at 4.  Revonet did not, however, produce any of the 2,832 pages of documents Covad knew to be in the second category of documents, *i.e.* the non-e-mail documents, which Revonet had also produced in hard copy format in September 2008 when it produced the 35,000 pages of e-mails. Id. at 4-5.  The parties conferred, and Covad agreed to

identify the priority non-e-mail documents, narrowing the 2,832 pages down to 148 documents. Id. at 5.  Of the 148 documents, Revonet agreed to produce thirteen. Id. at 6.

Revonet indicates that it did comply with my December 24, 2008 Order. Defendant Revonet's, Inc.'s Opposition to Plaintiff Covad Communications Company's Motion to Compel Compliance with the Court's Order of December 24, 2008 [#104] ("Rev's Opp. Covad's MTC") at 2.  According to Revonet, my order said to produce e-mails and attachments, previously produced to Covad in hard copy in August 2008, in native format, and Revonet did so within a month of the order. Id.  Revonet concedes that there was a discrepancy between the hard copy production and the electronic production, because the vendor used a different platform for filtering the responsive e-mails in their native format than was used when filtering e-mails in an HTML format. Id. at 3 n.4.  On the issue of the 2,832 non-e-mail pages, Revonet claims that it did not believe that my order obligated Revonet to re-produce those documents, but it has agreed to produce in native format the 148 priority documents identified by Covad. Id. at 8.

I reviewed the parties' submissions, and, in August 2009, I issued a stay of the motion and ordered Revonet to respond to certain questions posed by the Court. Covad Comm'cns Co. v. Revonet, Inc., 260 F.R.D. 5 (D.D.C. 2009) (hereinafter Covad V).  In that opinion, I clarified that the issues in Covad's motion occupy two distinct categories: (1) issues of format; and (2) issues of completeness. Id. at 6.  Currently, I am only addressing those issues pertaining to format.  I ordered Revonet to answer two questions regarding the 2,832 pages of documents: (1) "Have the 148 documents that Revonet agreed to produce now been produced in native format?", and (2) "Will Revonet produce the other 2,832 to which Covad refers?". Id. at 9. Revonet confirms that of the 148 documents prioritized by Covad, several were duplicates, reducing the number of documents to 118. Defendant Revonet, Inc.'s Response to Court's

Memorandum Opinion of August 25, 2009 [#130] ("Rev. Response to Court") at 5-6. Revonet
has located and produced all but 10 of these documents in native format and does not believe it
is obliged to produce any of the remaining 2,832 pages in native format because it produced the
148 documents (now 118) that it and Covad had agreed would suffice. Id.

In a motions hearing held on November 30, 2009, I questioned both parties about the
status of the documents. Covad maintains that it has right to the Revonet non-e-mail documents
in electronic format, while Revonet asserts that my order did not require that. Motions Hearing
Transcript ("Mot. Hr'g Tr.") 109:21-125:11, Nov. 30, 2009.

In writing the December 24, 2008 Order, I had in mind Revonet's inexplicable
conversion of e-mail data from its native format to TIFF and then producing it in hard copy.
Covad II, 254 F.R.D. at 150. Further, I was stunned by Revonet's production of other
documents that were completely useless to Covad, producing, for example, spreadsheet printouts
that ran "horizontally across several sheets of paper, resulting in a sea of random numbers and
data" and then telling Covad to paste together the hundreds of pages. Covad V, 260 F.R.D. at 8.
Yet, as I indicated in Covad II and reiterated in Covad V, Covad did not effectively specify the
form in which it wanted electronic documents to be produced. Covad V, 260 F.R.D. at 9 (citing
Covad II, 254 F.R.D. at 149-50). Further in Covad V, I noted that Federal Rule of Civil
Procedure 34(b)(E)(ii) requires, when a request does not specify a form for producing
electronically stored information, that "a party must produce it in a form or forms in which it is
ordinarily maintained or in a reasonably usable form or forms." Covad V, 260 F.R.D. at 9 (citing
Fed. R. Civ. P. 34(b)(E)(ii)). I noted that the strips of spreadsheet were clearly not produced in
the form that they were ordinarily maintained, nor were they produced in a reasonably usable
form. Id. Revonet's suggestion that the documents be pasted together was pure impertinence

and simply not acceptable to the Court; I found that it is improper to "take an electronically searchable document and either destroy or degrade the document's ability to be searched." Id. (citing Dahl v. Bain Capital Partners, Inc., 655 F. Supp. 2d 146, 150 (D.Mass. 2009) (requiring production of spreadsheets in native format); In re Classicstar Mare Lease Litig., No. 07-CV-353, 2009 WL 260954, at *3 (E.D.Ky. Feb. 2, 2009) (production may not degrade searchability); Goodbys Creek, LLC v. Arch Ins. Co., No. 07-CV-947, 2008 WL 4279693, at *3 (M.D.Fla. Sept. 15, 2008) (same; conversion of e-mails from native to PDF not acceptable); White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, 586 F. Supp. 2d 1250, 1264 (D.Kan. 2008) (same); L.H. v. Schwarzenegger, No. 06-CV-2042, 2008 WL 2073958, at *3 (E.D.Cal. May 14, 2008) (same); United States v. O'Keefe, 537 F. Supp. 2d 14, 23 (D.D.C. 2008) (applying same principle in criminal case)).

Now, Revonet attests to the fact that all of the difficult-to-decipher spreadsheets have been produced in native format, and that the 10 remaining non-e-mail documents of the priority documents, not produced in native format, are nevertheless usable in the hard-copy format the same way as the electronic copy, but without the metadata. Mot. Hr'g Tr. 116:20-25;117:9-14. Revonet further claims that the difficulty in re-producing the 2,832 pages in native format arises because when previous counsel for Revonet produced the documents, they originated from a variety of sources and were printed and produced, but were not saved as an aggregate on a CD to print out. Mot. Hr'g Tr. 115:22-25; 116:1-11.  Trying to trace back the origin and find the original electronic file is time-consuming, if not impossible, as 10 of the prioritized documents have not even been located.  Nevertheless, Revonet concludes that it has met its obligations under Rule 34: all of the documents have now been produced in a reasonable, useable fashion, which can include a hard copy when the format has not been specified. Mot. Hr'g Tr. 118:4-12.

Lastly, Revonet argues that if it is required to produce the remaining documents in electronic

format, Covad should be required, tit for tat, to re-produce various documents it produced in

hard copy  also in electronic format. Id. at 118:18-24.

       As I explained in my earlier order, Rule 34 of the Federal Rules of Civil Procedure

explicitly indicates that, when no form for producing electronically stored information has been

specified, it must be produced in a reasonably usable form. Fed. R. Civ. P. 34(b)(2)(E)(ii).

Earlier in this case, I found the production of 35,000 e-mails in hard copy to be unacceptable,

because no reasonable person could believe that Revonet, in its day to day operations, prints out

all of its electronic communications on paper and then preserves them. Covad II, 254 F.R.D. at

150-51.  The conversion to paper was therefore a bit of gamesmanship that I was not obliged to

tolerate.  Covad, however, would like me to take the current case law a step further and

determine that electronically stored data produced in hard copy is inherently unusable and

unacceptable under the Rules, because it lacks the metadata available in the native format. Mot.

Hr'g Tr. 121:18-23.  Thus, Covad asks the Court to hold that only native production, with

metadata, of electronically stored information, is reasonably usable under Rule 34(b)(2)(E)(ii).

But, the rule itself permits production *either* in the format in which e-mail is ordinarily

maintained, *i.e.* "native format," *or* another usable format. Thus, by its exact terms, the Rule

provides an alternative to the native format, contradicting Covad's claim that native, electronic

format is absolutely obligatory.

       Additionally, I am also bound by Rule 1, which requires me to construe and administer

the rules "to secure the just, speedy, and inexpensive determination of every action and

proceeding." Fed. R. Civ. P. 1.  I am further bound by Rule 26(b)(2)(C)(iii), which requires me

to limit discovery if I determine that "the burden or expense of the proposed discovery

outweighs its likely benefit, considering the needs of the case, the amount in controversy, the

parties' resources, the importance of the issues at stake in the action, and the importance of the

discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).  Faced with the motions

before me, I can say that the parties have bigger fish to fry, and that it is not in the interest of

judicial expediency to send defendant's counsel on what may be a futile task to find the origins

of hard copy documents that have already been produced in a usable format.  Moreover, Covad

does not offer a word as to why it needs native format to analyze and use the 2,832 pages it

already has.  There is no question presented by them that only the metadata can answer.  In the

absence of some reason to believe that the metadata will yield an answer that the hard copy will

not, production of the information in native format at this stage of this protracted struggle is not

necessary.  See The Sedona Conference, Best Practices, Recommendations, & Principles for

Addressing Electronic Document Production #12 (2004) ("Unless it is material to resolving the

dispute, there is no obligation to preserve and produce metadata absent agreement of the parties

or order of the court.").  Thus, as far as Covad's motion relates to the re-production of all of the

2,832 pages in a native format, the motion to compel is denied.

        Covad also seeks to compel compliance regarding the e-mail production and identified

three deficiencies in Revonet's e-mail production.  There are missing, according to Covad: (1)

internal Revonet correspondence or documents related to Covad; (2) e-mails from all relevant

staff; and (3) e-mails for "three extremely important individuals," Brian Thomas, Carl Teer, and

Dan Dudley. Pls. MTC at 12-13.  I find that much of this issue is intimately tied to both the

forensic search[1] and the spoliation motion, so I tread lightly in addressing it here.  Covad argues

---

[1] See Covad V, 260 F.R.D. at 6 (to the extent the motion deals with the completeness of
Revonet's responses, the motion has been overtaken by the May 27, 2009 Order imposing a
forensic search (citing Covad Commc'ns Co. v. Revonet, Inc. 258 F.R.D. 5 (D.D.C. 2009)
(hereinafter Covad III)).

that Revonet's deficiencies exist, regardless of the issues related to the loss of the servers,

because of Revonet's failures to use appropriate search terms. Id. at 14-15.  Thus, I found, in

Covad IV, that questions regarding the deficiencies of the initial search may be rendered moot

by the forensic search.  See Covad V, 260 F.R.D. at 8.  Thus, I continue to withhold a decision

on this matter until the final results of the forensic search are considered.

### III.  Defendant Revonet Inc.'s Motion for Sanctions

According to Revonet, Covad is not without blame in the discovery process, and it filed a

motion for sanctions related to deposition deficiencies.  See Rev's Mot. for Sanctions.  Revonet

had previously filed a request for sanctions on this issue,[2] which first presented some of these

issues to the court; however, I struck that motion for defendant's failure to comply with Local

Civil Rule 7(m), requiring counsel to meet and confer before filing a motion. April 27, 2009

Memorandum Order [#84] ("Apr. 27 Order").  The instant motion addresses only those disputes

that the parties were unable to resolve. Memorandum of Points in Support of Defendant Revonet,

Inc.'s Motion for Sanctions [#110] ("Rev's Memo. for Sanctions") at 1.  In June 2008, the

parties conferred and established a joint discovery plan, where Revonet indicated that it intended

to depose Jessica Saini, Charles Hoffman, Andy Lockwood, Kevin O'Brien, David McMorrow,

Debbie Jo Severin, and a complete Rule 30(b)(6) deposition of Covad. Id. at 6.  According to

Revonet, Covad failed to provide Revonet with deponent contact information, despite Revonet's

many requests for the same, thus disabling Revonet from noticing any deposition.  Revonet

claims that Covad first "no-showed," then later obstructed the only deposition that Revonet was

able to take, a Rule 30(b)(6) deposition of Covad. Id. at 5.

### A. Covad's Failure to Provide Timely Deponent Information

---

[2] Revonet, Inc.'s Supplemental Motion to Compel Discovery and Request for Sanctions [#78].

According to Revonet, counsel tried repeatedly to obtain contact information for current and former Covad employees to notice these depositions, but Covad refused to provide this information. Id. at 6.  Prior to the close of discovery, Revonet hoped to garner the contact information from Covad's 30(b)(6) witness; however, after a "no-show," the information was produced too late for Revonet to notice any further depositions. Id.  Revonet included Covad's failure to provide this information in its motion to compel filed September 2008.  See Revonet's Motion to Compel [#44].  I did not rule on the motion immediately, because I had hoped that the "resolution of other discovery issues in this case would obviate the need for judicial intervention in this instance." Covad Commc'ns Co. v. Revonet, Inc., 258 F.R.D. 17, 18 (D.D.C. 2009) (hereinafter Covad IV).  While hope springs eternal, it is sorely misplaced in this case.  Five months after I had ruled on Covad's motion to compel and six months after the close of discovery, judicial intervention was still required, so I issued an order requiring Covad to provide Revonet with the contact information. Id. at 6.  Nevertheless, Revonet now considers the damage done by Covad's failure to provide the information prior to the close of discovery to be irremediable. Id. at 7.

Shortly after the deposition, Covad filed a motion to extend the discovery deadline, scheduled to close for fact depositions on November 21, 2008 and all fact discovery on November 26, 2008, to May 15, 2009.  See Motion of Plaintiff Covad Communications Company to Extend the Time for Closing of Fact Discovery and to Establish Discovery Schedule [#54].  I eventually denied that motion as moot, because the time requested had come and gone, without resolution of the pending discovery disputes and the completion of the forensic search. When discovery closed on November 26, 2008, Covad had disclosed, through its 30(b)(6) witness, contact information for 2 of the 5 potential deponents.  Discovery had been closed for

over six months when Covad finally disclosed the contact information of the remaining potential deponents, upon my order to do so.  See Covad IV, 258 F.R.D. at 24.  Revonet's current motion essentially deems this disclosure as insufficient to rectify the harm suffered.  The discovery period has passed and the disclosure of the contact information for the remaining deponents months after the close of discovery does not rectify Covad's failure to provide this information before discovery closed.

Covad had listed the names of potential deponents in its initial disclosure. Federal Rule of Civil Procedure 26(e) specifically requires a party to supplement or correct such a disclosure or response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).  Further, Rule 37(c)(1) provides that the appropriate sanction for failure to disclose or supplement a disclosure, in accordance with Rule 26(e), is precluding the party from using "that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); see also Walls v. Paulson, 250 F.R.D. 48, 53 (D.D.C. 2008) (the Rule 37(c)(1) exclusion sanction is "automatic and mandatory" unless the party shows that the violation is "either substantially justified or harmless" (citing Elion v. Jackson, 544 F. Supp. 2d 1, 5-6 (D.D.C. 2008)).  "The burden is on the party facing sanctions to prove that its violation was either substantially justified or harmless." Elion, 544 F. Supp. 2d at 6 (citing Elion v. Jackson, No. 05-CV-0992, 2006 WL 2583694, at *1 (D.D.C. Sep. 8, 2006)).  In this case, Covad claims that there is no harm, because the 30(b)(6) witness provided the contact information, before the close of discovery, for two of the potential deponents, Jessica Saini and David McMorrow. Opposition of Covad Communications Company to Revonet, Inc.'s Motion for Sanctions [#112] ("Covad's Opp. to Rev's Mot. for Sanctions").  According to Covad, Revonet did not suffer any harm, because it could have noticed these two witnesses before the close of

discovery (three weeks later), and its failure to do so is Revonet's own fault. Id. at 19. In

addition, Covad takes issue with Revonet first seeking to compel this information in March 2009

in its Supplemental Motion to Compel Discovery and Request for Sanctions, Memorandum of

Points in Support thereof [#78], *after* the close of discovery, and now saying that this

information is insufficient to rectify the harm Covad has done to it in not producing the

information *before* the close of discovery. Covad's Opp. to Rev's Mot. for Sanctions at 19.

Covad moved to strike Revonet's supplemental motion in March 2009, and I granted the motion.

See Apr. 27 Order at 2.

I will not consider an argument made by Covad based on content within the stricken

Revonet document; to do so would allow Covad to use the rules improperly as both a sword and

a shield. Thus, the crux of Covad's argument opposing Revonet's motion for sanctions,

disregarding arguments related to Revonet's stricken pleading, are: (1) Revonet had one-third of

the information it sought three weeks before the close of discovery and has opposed an extension

to the discovery deadline; therefore, any harm caused by the delay in receiving the deponent

information is Revonet's own fault; (2) Revonet's request for sanctions is duplicative of the

request sought in its September 2008 motion; and (3) the sanctions are too harsh. Covad's Opp.

to Rev's Mot. for Sanctions at 6-8, 17-23.

The fact that Covad's 30(b)(6) witness provided Revonet with the contact information of

the two potential deponents does not excuse Covad of its responsibility to produce contact

information requested by Revonet. Further, Revonet's harm cannot be judged on whether or not

it consented to an extension to the discovery deadline; if that were the case, parties would have

the incentive to withhold essential discovery information as leverage for requiring opposing

parties to consent to enlargements of time.

Next, Covad's argument that the sanctions are duplicative of the relief sought by Revonet in its September 15, 2008 motion is not supported by a plain reading of the motions.  In its September 15, 2008 motion, Revonet sought to compel the deponent information and attorneys' fees associated with preparing the motion to compel.  I granted the motion, but for the reasons I mention above, and to the potential benefit of Covad, I waited several months to issue a ruling because I believed that resolution of Covad's motion to compel by my December 24, 2008 Order would lead to Covad taking actions that would obviate the need for judicial intervention regarding Revonet's September 15, 2008 motion to compel. Covad IV, 258 F.R.D. at 19.  I believed my ruling would generate a flow of information from Covad that did not occur and by the time the information was produced, Revonet now argues, it was too late.  In addition, none of the individuals still even work at Covad and "may very well be uncooperative witnesses." Defendant Revonet, Inc.'s Reply to Plaintiff Covad Communications Company's Opposition to Revonet, Inc.'s Motion for Sanctions [#114] ("Reply to Mot. for Sanctions") at 5.

To overcome the mandatory application of sanctions imposed by Rule 37(c)(1), Covad must meet the burden to prove that the violation of Rule 26(e) was substantially justified or harmless.  See, e.g., Elion, 544 F. Supp. 2d at 6.  I can find no explanation for Covad's failure other than the gamesmanship that has haunted the case for years– "I will not give you this, no matter what obligation the Federal Rules impose, until you give me that." Sanctions are unquestionably in order, but preclusion is only one of the options.  Rule 37(c)(1) permits the court to impose additional sanctions, or other appropriate sanctions in lieu of the exclusion sanctions. Walls, 250 F.R.D. at 54.  Protracted discovery disputes have plagued the case and the imposition of a lesser sanction would necessitate re-opening discovery, well over a year after it has closed.  Nevertheless, I find that granting the exclusion sanction might result in a strange

perversity: Covad might benefit from the exclusion as Revonet too would be precluded from gaining any evidence from the witnesses it may need.  For example, evidence as to damages Covad can legitimately claim may be uniquely in Covad's possession.  I will not reward bad behavior by letting Covad escape from the depositions Revonet had every right to insist be taken.  I do not want it to snicker that it kept crucial information from Revonet and paid the cheap price of being precluded from calling witnesses that it was not going to call in the first place.  Instead, I will re-open discovery for the very limited purpose of allowing Revonet to conduct these depositions, if it wishes.  If not, I will award Revonet the preclusion it seeks.  I will stay the re-opening of discovery, for this limited purpose, until after I have ruled on Covad's pending spoliation motion.  The resolution of that motion may affect whether it even makes sense to take the depositions.  Further, after the resolution of the spoliation motion, I will return to this issue and consider whether Covad should bear the entire financial burden of Revonet's taking the depositions of Jessica Saini, Kevin O'Brien, David McMorrow, Charles Hoffman, and Andy Lockwood.  I will not grant attorneys' fees incurred by Revonet in seeking this information, as I have already granted such a petition in an earlier order.

### B. Deposition Deficiencies Related to Covad's 30(b)(6) Witness

Revonet also seeks sanctions for problems related to the deposition of Covad's 30(b)(6) witness. According to Revonet, Covad: (1) failed to appear at a duly noticed deposition; (2) Covad failed to prepare its 30(b)(6) witness; and (3) Covad's counsel made obstructionists and improper objections during deposition. Rev's Mot. for Sanctions at 9-16.  Revonet asks the Court to: (1) prohibit Covad from calling Covad's 30(b)(6) witness, Debbie Jo Severin, at trial; (2) require Covad to accept as true any matters in the deposition of Ms. Severin that Revonet

chooses to assert in this case; (3) deem Covad's objections at the deposition be waived; and (4) find Covad to be in contempt of court. Id. at 16.

1. <em>Failure to appear.</em>

According to Revonet, it noticed the 30(b)(6) deposition three weeks before the date of the deposition, providing Covad more time than required under the Federal Rules of Civil Procedure. Id. at 11. The notice of deposition included over sixty areas of information to be covered by the deposition. Covad's Opp. to Rev's Mot. for Sanctions at 10. Covad raised concerns about the number of topics to be covered in the deposition and sought to discuss the possibility of establishing a comprehensive deposition plan, which would allow an integrated approach to discovery. See Rev's Motion for Sanctions at Ex. D. Revonet clearly informed Covad that, despite Covad's concerns, Revonet planned to go forward with the deposition. See Rev's Motion for Sanctions at Ex. A. Revonet indicated in a letter to Covad's counsel that, over the past months, it had attempted to work with Covad to schedule the depositions, to no avail. Id. As such, it was determined to move forward with the timely noticed deposition. Id. Despite its concerns, Covad did not file a motion for a protective order, nor did it indicate to Revonet's counsel that it was unavailable for the deposition. See Rev's Mot. for Sanctions at Ex. D. Instead, Covad insisted the deposition should be part of an integrated approach and proposed alternative dates for the deposition, without stating that it intended to not attend the duly noticed deposition. Id.

When the date of the deposition arrived, neither Covad nor its counsel arrived at the deposition. Rather than immediately seek sanctions, Revonet wrote a letter to Covad indicating that it was serving a new notice of deposition, for a date identified by Covad, and that it reserved the right to move for sanctions. Id. The new notice included only forty-two topics to be covered

by the deposition. Id.  Despite the record of the conversations between counsel, and

representations made in the November 30, 2009 motions hearing, I cannot find any instance

where Covad specifically indicated that it would not show-up for the noticed deposition.

Further, Covad never made a motion to the Court for a protective order.  Instead, I find that the

record reflects a game of "chicken," where counsel for each side insisted on their own position,

without any regard to seeking a compromise.  Revonet was beyond clear in stating that it was

going to move forward with the duly noticed deposition. Id. at Ex. A.  In not showing up, despite

Revonet's clear statement that it intended to go forward, and by not seeking protection from the

Court, Covad had to know it risked sanctions.  Sanctions are appropriate when a party, after

being served with proper notice, fails to appear for a deposition. Fed. R. Civ. P. 37(d)(1)(A).

Failure to appear "is not excused on the ground that the discovery sought was objectionable,

unless the party failing to act has a pending motion for a protective order. . . ." Fed. R. Civ. P.

37(d)(2).  Revonet has sought reasonable expenses, including attorneys' fees, caused by this

failure.  This is an appropriate sanction under Rule 37, unless the failure was substantially

justified or other circumstances make the award of expenses unjust. Fed. R. Civ. P. 37(d)(3).  As

Covad has not made such a showing, I find that Revonet is entitled to reasonable expenses,

including attorneys' fees, associated with Covad's failure to appear for the deposition noticed for

October 7, 2008.

## 2. *Witness inadequately prepared.*

Revonet also argues that additional sanctions are required for the deposition deficiencies

that occurred once the 30(b)(6) deposition did take place on October 28, 2009.  According to

Revonet, Covad's witness was "woefully unprepared," which effectively was the same as failing

to appear. Rev's Mot. for Sanctions at 12-13.  Courts in this district have found that a corporate

party's failure to educate its 30(b)(6) witness with respect to the corporation's full knowledge of topics noticed for the deposition is effectively a failure "to appear for the purposes of Rule 37(d)." In re Vitamins Antitrust Litig., 216 F.R.D. 168, 174 (D.D.C. 2003).  While Revonet relies on In re Vitamins to make its argument that sanctions are appropriate in this case, it fails to mention that the number of topics to be covered in Covad's 30(b)(6) deposition were quadruple the number at issue in In re Vitamins.  Id.  Further, Revonet was on notice that Covad did not believe that all forty-two noticed topics could be covered effectively by one witness. Rev's Mot. for Sanctions at Ex. A.  Instead, again similar to a game of "chicken," Revonet pushed forward with the deposition, only to feign surprise when Covad's witness was not knowledgeable on all forty-two topics.  Nevertheless, Revonet raises concerns that Covad will render the deposition useless by asserting, at trial, that Ms. Severin's statements are "untrustworthy because she did not have adequate knowledge to assert them" and that Revonet may be forced to oppose Ms. Severin at trial without proper preparation. Id. at 14.  Covad argues that Revonet has not presented, with any particularity, the information it sought that Ms. Severin was unable to provide. Covad's Opp. to Rev's Mot. for Sanctions at 12-13.  Further, Covad argues that Revonet failed in its obligation to "describe with reasonable particularity the matters on which the examination is requested." Id. at 13 (citing Fed. R. Civ. P. 30(b)(6)).  Revonet served notice that consisted of forty-two "broad areas of inquiry" and without "reasonable particularity." Id. Further, Covad argues that Revonet's counsel expressly acknowledged that the witness could not "reasonably be expected to know the answers to all the questions asked." Id. at 14.  Covad charges that since that acknowledgment, Revonet now demands encyclopedic knowledge of all of the areas covered in the deposition, which is inappropriate, because a rule of reason must

apply. Id. (citing Banks v. Office of the Senate Sergeant-At-Arms, 241 F.R.D. 370, 373 (D.D.C. 2007)).

As I have stated before, one of the "primary purposes of the Rule 30(b)(6) deposition is to 'curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to the organization and thereby to it.'" Banks, 241 F.R.D. at 372-73 (citing Fed. R. Civ. P. 30(b)(6) advisory committee notes). Accordingly, upon receiving notice of the deposition that contains a description, with reasonable particularity, the matters on which examination is requested, a corporation must: (1) designate a deponent knowledgeable on the topic; (2) designate multiple deponents if more than one is necessary to respond to all designated topics; and (3) prepare the deponent so that he or she can testify on matters both within his or her personal knowledge as well as those "reasonably known by the responding entity." Banks, 241 F.R.D. at 373 (citing Alexander v. Fed. Bureau of Investigation, 186 F.R.D. 137, 139-41 (D.D.C. 1998)). A court "must guard against the gamesmanship of a company avoiding deposition topics by, for example, naming as a 30(b)(6) witness a person who knows nothing about the topics and does nothing to inform himself about them so that his deposition threatens to be a series of cynical 'I do not know' statements." Banks, 241 F.R.D. at 375 (citing In re Vitamins, 216 F.R.D. at 168).

In Banks, I examined the deposition responses about which plaintiff complained to determine whether the witness satisfactorily responded to questions he was designated to answer, and I ultimately concluded that the witness was not engaged in the "bandying" behavior contemplated by the advisory committee to Federal Rules. Id. at 373. In the instant case, I have reviewed the deposition, and I must reach the same conclusion. While Ms. Severin lacked knowledge in certain areas, she was well informed in most of the areas of inquiry that Revonet

pursued with her.  I also found that her ignorance in certain areas was understandable given her

duties and that there was no attempt to produce a witness who was purposefully ignorant and

chosen because of that ignorance.  Indeed, I appreciate that counsel who took the deposition is

no longer Revonet's counsel, but I must note that she never protested that the deponent's

ignorance was so woeful that she was demanding that Covad produce additional 30(b)(6)

witnesses to answer the questions that the deponent could not answer for lack of knowledge.

She never made any such objection and the deposition simply comes to an end without protest.

My review indicates that Revonet has little cause for complaint.  It is often impossible in any

enterprise where employees have distinct roles for there to be one person who can answer all

questions posed during a 30(b)(6) deposition.  Ignorance in one area, provided it is professed in

good faith, may lead to additional 30(b)(6) witnesses, but it should not lead to sanctions that

should be reserved for the "bandying" that the courts have found unacceptable.

### 3. *Objections*

In addition to Ms. Severin's limited knowledge, Revonet seeks sanctions for Covad's

counsel's "obstructionist behavior and improper objections during the deposition of Ms.

Severin." Rev's Mot. for Sanctions at 14.  According to Revonet, sanctions are appropriate under

Rule 30(d)(2) when a person "impedes, delays, or frustrates the fair examination of [a]

deponent." Rev's Mot. for Sanctions at 14 (citing Fed. R. Civ. P. 30(d)(2)).  I have reviewed the

transcript of the deposition and have concluded that Covad's counsel did not engage in such

behavior.  I have found that, for the most part, he made non-speaking objections to preserve a

record of his objection and that the objections were not more than a sentence long.  I know that

counsel for Revonet who took the deposition is not Revonet's present counsel.  Frankly, her

questions were on occasion so complicated and compound that the witness needed help to

understand them; these questions certainly warranted objection. I cannot say that Covad's

counsel's objections were frivolous and made in bad faith to the point that Revonet was denied

the true opportunity to examine the witness. To the contrary, as I noted above, the deponent

provided more than adequate information in the areas with which she was familiar and counsel's

behavior did not obstruct that process. While I am troubled by Covad's counsel occasional

instruction to the witness not to answer even though the question did not require the disclosure

of privileged information, there were not so many of these instances as to permit characterizing

him as obstructionist. Indeed, as so often happens, the witness either answered anyway or gave

the answer a few questions later. Again, I note the absence of any contemporaneous objection

by Revonet's counsel to Covad's counsel's behavior by claiming that he had so obstructed the

entire deposition that she would stop and seek relief from the Court.

On the whole, the deposition here was par for the course. Covad's counsel could have

made fewer objections, but he is not obliged to be a potted plant. I will not grant Revonet's

motion for sanctions as it relates to the 30(b)(6) deposition.

### IV. Defendant Revonet, Inc.'s Motion to Quash Subpoena *Duces Tecum*, or in the Alternative, for a Protective Order Under Rule 26(c) Preventing Discovery

On or about August 10, 2009, Covad served a subpoena *duces tecum* upon SDN

Communications, Inc., a service provider of Revonet, requesting certain call records for

Revonet. Rev's Mot. for Protect. Order at 1. Revonet filed this instant motion to quash;

however, Revonet conceded in the November 30, 2009 motions hearing that the motion is moot,

in light of the ruling by the South Dakota District Court regarding a motion filed by Covad in

that court to compel SDN Communications, Inc. to produce the records. Defendant Revonet,

Inc.'s Reply in Support of its Motion for a Protective Order Under Rule 26(c) Preventing

Discovery [#165] ("Rev's Reply for Protect. Order") at 1. I will therefore find that the motion to

quash [#118] is moot.  The motion for protective order, however, is still pending and must be resolved.

Revonet identified certain telephone records in its initial disclosures, and Covad requested the records at the outset of discovery.  Covad's Opposition to Revonet's Motion to Quash Subpoena *Duces Tecum* or for a Protective Order Preventing Discovery [#159] ("Covad's Opp. Protect. Order") at 2.  Revonet claims that it did not realize that the telephone records had not been disclosed until a meet-and-confer with Covad in May 2009. Mot. Hr'g Tr. 70:10. Revonet began searching for the documents and sent Covad letters in June and July 2009 with updates on the search. Id. at 70:9-11.  The documents were not produced by early August, so Covad filed a subpoena in the South Dakota District Court for the third-party telephone provider, SDN Communications, to produce the phone records it sought, as well as any documents related to Revonet. Id. at 70:15-16, 22-23.  On August 21, 2009, Revonet filed this pending motion, after having tried to resolve the issue with Covad without the Court's intervention. Rev's Reply for Protect. Order at 2.  On September 4, 2009, Covad informed Revonet that it would be filing a motion to compel, in regards to the subpoena, but Revonet asked Covad to wait, as Revonet had just received the documents and would be producing them "in short order." Mot. Hr'g Tr. 72:8-14.  Nevertheless, Covad filed its motion to compel on September 4, 2009; Revonet produced the documents on September 8, 2009. Id. at 72:13-19.  Covad went ahead in litigating the motion to compel, despite Revonet's production of the documents it sought. Id.  On September 23, 2009, Revonet filed a mirror motion to quash and motion for protective order in the South Dakota District Court. Rev's Reply for Protect. Order at 14.  The South Dakota District Court granted Covad's motion to compel on November 4, 2009, and SDN Communications produced the documents on November 16, 2009. Id. at 15.

Revonet does not claim privilege fore any of the documents produced, but argues that Covad issued the subpoena, in direct contravention of Judge Kollar-Kotelly's scheduling order, which indicated that fact discovery would close November 26, 2008. Rev's Mot. for Protect. Order at 2-4.  Covad claims that discovery is not in fact closed, despite the fact that Judge Kollar-Kotelly's scheduling order has not been amended. Covad's Opp. to Protect. Order. at 7. Covad also claims, even if discovery is closed, there is "good cause" to allow its extension in this instance. Id. at 9.

Revonet's initial disclosures identified telephone records; on September 8, 2009, they produced the records.  To the extent the documents produced by SDN Communications in response to the subpoena are duplicates of documents produced by Revonet, I will find the motion for protective order to be moot.  To the extent documents produced by SDN Communications have not been produced by Revonet, a protective order may be in order if I am convinced that Covad was not entitled to the documents produced by SDN in addition to the documents produced by Revonet.  If I find that they were not, I will sanction Covad for wasting everyone's time.  Covad will therefore make available to me in two separate packets, the documents it got from SDN and the ones it got from Revonet.

## V.  Defendant Revonet's Motion to Compel

On September 15, 2008, Revonet filed a motion to compel.  I postponed a decision on the motion, in the misplaced hope that some of the issues within the motion would be resolved in light of other orders I issued in the case.  The issues were not resolved and, on May 29, 2009, I issued an order granting Revonet's motion to compel.  See Covad III.  I determined that Covad's responses to Revonet's interrogatories ranged from inadequate to insufficient, with some requiring supplementation. Id. at 19-24.  In addition, I required Covad to produce documents

requested in Revonet's first and third request for production of documents, or provide a written statement indicating that it has produced all responsive documents. <u>Id.</u> at 24.  Further, I ordered Covad to supplement its responses to Revonet's requests for admissions within five days of the issuance of my order. <u>Id.</u>  Now, Revonet has filed another motion to compel compliance with my order and to address new discovery deficiencies.  <u>See</u> Rev's MTC.  According to Revonet, Covad has (1) failed to provide legally sufficient privilege logs, (2) refused to supplement its responses to Revonet's third request for admissions, (3) has failed to timely respond to the deadlines in my May 29, 2009 order, and (4) provided responsive e-mails in burdensome MSG format. <u>Memorandum of Points and Authorities in Support of Defendant Revonet, Inc.'s Motion to Compel</u> [#120] ("Rev's Memo. to Compel at 2-3").

## A. <u>Privilege Logs</u>

Covad claims that the privilege log issue has been resolved;[3] a claim that Revonet vehemently denies. <u>Defendant Revonet, Inc.'s Reply in Support of Its August 24, 2009 Motion to Compel</u> [#164] ("Rev's Reply MTC") at 15.  Revonet claims that Covad has not identified persons who are attorneys on the log and has not sufficiently described the documents on the log. Rev's Memo. to Compel at 4.  I have long found privilege logs to be on the whole useless.  <u>See,</u> <u>e.g.,</u> <u>Mitchell v. Nat'l R.R. Passenger Corp.,</u> 208 F.R.D. 455, 461 (D.D.C. 2002).  Typically when faced with a dispute over the sufficiency of descriptions in a privilege log, and when the number of documents is not great, I will order the documents produced for <em>in camera</em> review, with an accompanying memorandum of law articulating why the privilege applies.  <u>See id.</u> at 461.  To conserve judicial resources, I will postpone such a review until after the resolution of the motion for spoliation, which has a potential dispositive effect.  If the case continues after the

_____

[3] <u>Opposition of Covad Communications Company to Revonet Motion to Compel</u> [#160] ("Covad's Opp to MTC") at 2.

resolution of that motion, I will require Covad to submit to me, for an *in camera* review, those documents to which it has claimed privilege.

### B. Responses to Revonet's Third Request for Admissions

In November 2008, Covad responded to Revonet's <u>Third Request for Admissions</u>, two weeks late, objecting to each request. Rev's Memo. to Compel at 5.  Five hard-copy documents were attached to the request, and Covad was unable to authenticate the documents, because the hard-copy printouts were not the actual documents. Covad's Opp. to MTC at 5.  The discovery deadline closed shortly after Covad's response, and Revonet was not able to serve an additional request for admissions, with the electronic versions of the documents. <u>Id.</u>  At a meet-and-confer on May 1, 2009, Revonet followed-up with Covad about the request for admissions, and Covad explained why the hard-copy documents could not be authenticated. <u>Id.</u>  Covad's counsel suggests that Revonet serve a new request for admissions, with the electronic versions attached. <u>Id.</u>

Before reaching the adequacy of Covad's responses, there is a preliminary matter to resolve.  Revonet claims that Covad's responses were two weeks late. Rev's Reply to MTC at 20.  Covad does not address the issue of lateness in its opposition; however, Revonet correctly asserts that the Federal Rules of Civil Procedure require responses to requests for admissions to be served within thirty days, or the matter is admitted. <u>Id.</u> at 20 (citing Fed. R. Civ. P. 36(a)(3)). I will provide Covad the opportunity to address this issue.  Thus, I will order Covad to show cause as to why Revonet's <u>Third Request for Admissions</u> should not be deemed admitted. Again, to preserve judicial resources, Covad will not be required to respond to my order to show cause until the resolution of the potentially dispositive spoliation motion.

### C. Covad's Failure to Timely Respond to the Court's May 29, 2009 Order

Despite my May 29, 2009 order, Revonet claims that Covad has failed to timely provide supplemental responses to Revonet's first and second sets of interrogatories and first requests for admissions. Rev's Memo. to Compel at 6-7.  Covad responds that the responses were in fact timely. Covad's Opp. to MTC at 7-8.  Revonet's reply also alleges that the responses are incomplete. Rev's Reply to MTC at 3.  I find that Covad had not had adequate opportunity to respond to this issue and will order Covad brief the issues contained in Revonet's reply brief Part II, Section A, page 2-15.  Covad will not be required to submit this brief until after the resolution of the motion for spoliation, should its resolution not have a dispositive effect.

### D. Covad's MSG-Formatted E-mail Production

Covad made its production of e-mail in MSG format, which is not the PST form in which they are ordinarily maintained. Rev's Reply to MTC at 25-26.  Revonet has withdrawn its motion to compel in regards to the format of the e-mails, but maintains its requests for attorneys' fees and added IT and personnel costs related to the review of the e-mails produced in such a burdensome format. Id.  Revonet has not explained to me why the production in MSG was so much more burdensome than the production in PST format.  On other occasions, I have indicated how dangerous it is for lawyers to opine on technical matters when they lack the necessary understanding and training.  See, e.g., United States v. O'Keefe, 537 F. Supp. 2d at 24.  I shall take a dose of my own medicine and, if Revonet wants to spend more money and more time, hold an evidentiary hearing at which it will have to prove to me that production in one format rather than another was as burdensome as it claims.  I expect testimony specifically directed to that issue.  Once I have resolved the spoliation motion, Revonet will have to advise me by praecipe whether it intends to press this contention and secure sanctions against Covad.

## VI. Defendant Revonet, Inc.'s Fee Petition

The final issue to be addressed is Revonet's pending fee petition.  In May 2009, I ordered Covad to show cause why it should not have to reimburse Revonet for the fees and costs Revonet incurred in bringing its September 2008 motion to compel. Covad IV, 258 F.R.D. at 24-25.  In August 2009, I ordered Covad to compensate Revonet for reasonable expenses incurred in making the motion. Covad Commc'ns Co. v. Revonet, Inc., 262 F.R.D. 1, 2 (D.D.C. 2009) (hereinafter Covad VI).  I ordered the parties to meet and confer in good faith to attempt to arrive at a reasonable amount for compensation, and, in the event the parties were unable to agree, Revonet was to file a fee petition. Order [#116] (Aug. 17, 2009).  The parties, hardly to my surprise, could not agree on a reasonable amount, and pending before me is Revonet's petition for fees.  There are three main points of disagreement between the parties in regards to the fee petition: (1) whether it is reasonable for Revonet to include time spent in July and August in the amount to be compensated and, if so, is the amount of time billed in July and August reasonable; (2) whether the status of Revonet's debts to Whiteford, Taylor and Preston, LLP ("Whiteford"), its counsel at the time of the motion, matter in determining reasonable compensation; and (3) which *Laffey* matrix should apply.  I will consider each issue in turn.

### A. Legal Standard

The method adopted in this district for calculating attorneys' fees is called the "lodestar method," where the "the court multiplies a reasonable hourly rate by a reasonable number of hours expended." Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 248 F.R.D. 64, 68 (D.D.C. 2008) (citing Cobell v. Norton, 231 F. Supp. 2d 295, 300 (D.D.C. 2002) (citations omitted)).  Thus, in order to calculate Revonet's fee award, "the Court must determine: (1) the reasonableness of the hourly rate charged; and (2) the reasonableness of the hours expended on

the litigation." Woodland v. Viacom Inc., 255 F.R.D. 278, 280 (D.D.C. 2008) (citing Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995)).  In determining the reasonableness of the rate, in this Circuit, "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Woodland, 255 F.R.D. at 280-81 (citing Kattan ex rel. Kattan v. District of Columbia, 995 F.2d 274, 278 (D.C. Cir. 1993)).  "To determine the reasonableness of the number of hours expended on the litigation, the fee petitioner must submit evidence to the court that supports the hours worked." Woodland, 255 F.R.D. at 281 (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). The fee petitioner's application must be sufficiently detailed to allow the Court to determine, independently, that the hours claimed are justified. Woodland, 255 F.R.D. at 282 (citing Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982)).

### B. Fees for Work Conducted in July and August

Covad's first issue with Revonet's fee petition is that the hours for July and August are not reasonable. Plaintiff Covad's Memorandum in Opposition to Defendant Revonet, Inc.'s Fee Petition [#142] ("Covad's Opp. to Fee Petition") at 9-13.  Revonet argues that it began necessary and preliminary work in July and August 2008 that supported its motion to compel. Rev's Fee Petition at 5.  Covad contends that the work in July and August is not compensable because it was "too preliminary," and even if it is not "too preliminary" it is work that would be done in the regular course of legal representation, which means that it is not compensable under Tequila Centinela. Covad's Opp. to Fee Petition at 9-10.  Revonet responds that much of the work that went into the preparation and letter drafting was not part of the ordinary course of discovery. Defendant Revonet, Inc.'s Reply In Support of Its Fee Petition, Submitted in Accordance with

Court's August 17, 2009 Order [#145] ("Rev's Reply for Fee Petition") at 3.  For example,

Revonet would not have had to review the rules or work to encourage compliance with the

requests had Covad complied in the first place. Id.

"A near 'but for' relationship must exist between the [Federal Rules of Civil Procedure]

Rule 37 violation and the activity for which fees and expenses are awarded." Woodland, 255

F.R.D. at 283 (quoting Cobell v. Babbitt, 188 F.R.D. 122, 127 (D.D.C. 1999) (citing

Westmoreland v. CBS, Inc., 770 F.2d 1168, 1179 (D.C. Cir. 1985)).  Covad's discovery

deficiencies required Revonet's attorneys to spend time reviewing rules and drafting letters to

chase down the deficient or delinquent discovery they sought.  To the extent that time included

in the petition is time spent simply reviewing the documents, it is not compensable,[4] but any time

spent comparing deficiencies and working to correct them may be reasonable as preliminary

work that is useful and ordinarily necessary in preparation for the motion to compel.  See, e.g.,

Woodland, 255 F.R.D. at 283 (citing Kister v. District of Columbia, 229 F.R.D. 326, 330

(D.D.C. 2005) (finding that work that is useful and of a type ordinarily necessary to secure the

final result obtained from the litigation is compensable) (internal quotations omitted)); see also

Tequila Centinela, 248 F.R.D. at 69 (finding that time spent comparing produced documents and

privilege logs with discovery requests to determine deficiencies was compensable)).

Revonet's counsel's time spent detailing Covad's deficiencies in letters to counsel relate

directly to the motion to compel, in that the letters represented Revonet's first steps towards

compelling the production of the documents.  Revonet's counsel expended time and effort to

avoid having to file a motion to compel by attempting to work directly with counsel for Covad to

---

[4] See, e.g., Tequila Centinela, 248 F.R.D. at 70 (finding that hours spent on ordinary and necessary litigation activities lack a close enough relationship to the Rule 37 violation and should not be included in the fee award).

correct the deficiencies, both without and then with the involvement of the court.  The effort at cooperation with opposing counsel not only had a "near" relationship to the motion to compel, it was a necessary pre-condition to making the motion, because Judge Kollar-Kotelly's Scheduling Order requires such cooperation among counsel.  See Scheduling Order [#10].  Finding that time spent working with opposing counsel towards a solution is not compensable would have the perverse effect of encouraging parties to forego meaningful engagement with the opposing party. In this particular case, the spirit and letter of rules requiring attorneys to meet and confer are often treated in a perfunctory manner or completely disregarded.  I will not discourage the few examples of cooperation in this case.  Indeed, if the efforts of the federal courts to reduce the costs of discovery and, in particular electronic discovery, are to be taken seriously,[5] then counsel will have to know that judicial orders and local rules requiring meaningful discussions between counsel before discovery motions are filed mean what they say.  If attorneys insist on "drive by" meetings and conferrals, or they think that exchanging nasty e-mails about how they will not talk and will not cooperate satisfies the requirements will suffice, then they have to know that they are going to get hit where it hurts– in their pocketbooks.

I therefore find the July and August hours to be compensable.  Revonet's counsel has offered to reduce the July and August fees by 10% for the eventual production of some documents by Covad without judicial intervention.  I will adopt that recommendation.

Even if the hours are compensable, Covad contends that much of the time spent in July and August, especially in relation to the various conference calls in August, was spent discussing both problems with Covad and Revonet's discovery responses. Covad's Opp. to Fee Petition at 4.  Covad argues that Revonet has "co-mingled" the time spent preparing Revonet's responses

---

[5] See generally The Sedona Conference Cooperation Proclamation (2008), available at http://www.thesedona conference.org/dltForm?did=Cooperation_Proclamation.pdf.

and in disputing deficiencies regarding those responses. Id. at 11.   Covad notes that it is impossible from the billing statements and descriptions in the Fee Petition to tell what portions of the time was spent on Covad's, as opposed to Revonet's, discovery deficiencies.   See, e.g., Rev's Fee Petition at 2-3.   Revonet responds by saying that the redacted portions in the billing records contained in Exhibit A are the portions of the time spent on Revonet issues, and that the time indicated in the Fee Petition is only for the time spent on Covad's noncompliance. Rev's Reply for Fee Petition at 2.   Revonet further argues that the amount of time billed for these issues is reasonable and remarkably low, considering the amount of legal work that was done in that time. Id.

Understandably, Covad does not want to compensate Revonet for time spent discussing Revonet's own discovery deficiencies.   Covad fails to recognize, however, that it "co-mingled" the parties' discovery deficiencies in the first place by its vigilante discovery sanction of removing itself from the discovery process and providing nothing in order to force Revonet to produce documents in their native format.   See Covad IV, 258 F.R.D. at 25.   Thus, when Revonet's own deficiencies were discussed between opposing counsel, it very likely was in the context of why Covad's insistence that it would do nothing until Revonet complied with Covad's demand was unjustifiable.   In other words, Revonet had to speak to Covad's claims of deficiency to answer Covad's argument that Revonet's deficiencies were so great that Covad was justified in doing nothing at all until Revonet first complied with Covad's demand.   The hairsplitting required to "de-mingle" the time discussing Revonet's deficiencies in relation to Covad's deficiencies from the time discussing Revonet's deficiencies independently of Covad's is, if not impossible, as about as useful as asking how many angels could dance on the head of a pin.   It is an argument that should not be entertained when it comes from a party whose attitude of

boycotting discovery until it got its way led to so many problems and so much expense.  There

will be no further reduction from the July and August fees.

## C. <u>Status of the Revonet's Debt to Whiteford</u>

Covad objects to compensating Revonet as far as it has not paid any outstanding debt to

Whiteford for work completed in making the motion to compel, because Revonet has not yet

incurred expenses if it has not paid Whiteford. Covad's Opp. to Fee Petition at 8.  Covad

provides no legal authority to support its assertion that the bills must be paid in order for the

expenses incurred to be recoverable.  Whiteford indicated that the amount owed was not

forgiven or reduced in any way.  Rev's Reply for Fee Petition at 4.  There is also no evidence

presented by Covad to indicate that the actual value of the money owed has been decreased by

Whiteford.  Even if Whiteford has written off the value of the debt owed to it by Revonet,

forcing Covad to pay the attorneys' fees still does not represent "an unjustifiable windfall." <u>Id.</u>

In making this argument, Covad seems to forget that the fees paid to Revonet are both to

compensate Revonet for the cost incurred in making the motion, and, as importantly, as a

sanction for Covad's failure to comply with its discovery obligations.  The windfall would be all

Covad's, if I were to order the reasonable fees reduced on this basis alone.

## D. <u>Appropriate *Laffey* Matrix</u>

Covad argues that Revonet based its reasonableness assumption on a matrisx that allows

for fees greater than the *Laffey* used by the United States Attorney's Office for the District of

Columbia ("USAO"). Covad's Opp. to Fee Petition at 13-14.  Even the most preliminary

research would have shown that I have covered this ground in the past.  <u>See</u> <u>Fraternal Order of

Police, D.C. Lodge 1 v. Barry</u>, No. 08-CV-462, 2009 WL 430393, at *3 (D.D.C. Feb. 23, 2009);

<u>Woodland</u>, 255 F.R.D. at 280-81.  I have most often held that "the USAO's *Laffey* rates are the

more appropriate measure of reasonable legal fees particularly where there has been no factual basis presented for awarding the higher fees." Fraternal Order of Police, 2009 WL 430393, at *3 (citing Woodland, 255 F.R.D. at 280-81; Miller v. Holzmann, 575 F. Supp. 2d 2, 13 (D.D.C. 2008; and M.R.S. Enters. v. Sheet Metal Workers Int'l Assoc., No. 05-CV-1823, 2007 WL 950071, at *4 (D.D.C. Mar. 29, 2007)).  I have, on occasion, however, found rates higher than the *Laffey* rates to be reasonable where a party provides the Court evidence as to why the higher rates are reasonable in a given case.  Here, plaintiff provides no evidence, but simply argues that the Updated *Laffey* rates are more appropriate. Rev's Reply for Fee Petition at 4.  They are not; plaintiff's lodestar rates will be adjusted down to the appropriate *Laffey* rate for each timekeeper.

Thus, with the reduction in fees and the 10% reduction for July and August, Covad is required to pay Revonet:

| | | |
|---|---|---|
| July 2008 | $ | 2,423.70 |
| August 2008 | $ | 2,289.90 |
| September 2008 | $ | 7,611.00 |
| October 2008 | $ | 3,132.00 |

**TOTAL**   $15,463.60 in compensation.

### VII. Conclusion

For the reasons stated herein, I will: deny Motion of Plaintiff Covad Communications Company to Compel Compliance with the Court's Order of December 24, 2008 and Applicable Law Requiring E-Discovery [#100] as it relates to re-production of the 2,832 hard-copy pages of documents in native format and deny without prejudice Covad's motion as it relates to items that potentially will be addressed through the forensic search; grant in part and deny in part Defendant Revonet Inc.'s Motion for Sanctions [#110]; find as moot Defendant Revonet, Inc.'s

Motion to Quash Subpoena *Duces Tecum* [#118]; denying without prejudice Revonet's Motion

for a Protective Order Under Rule 26(c) Preventing Discovery [#119] and ordering Covad to

submit documents to the Court; grant in part and deny in part Defendant Revonet's Motion to

Compel [#120] and require Covad to make an *in camera* submission and additional briefing; and

grant in part and deny in part Defendant Revonet, Inc.'s Fee Petition in Accordance with Court's

August 17, 2009 Order [#137].  Further, after the resolution of plaintiff's spoliation motion,

defendant is ordered to notify the Court if it wishes to re-open discovery for the limited purpose I

indicated and if it wishes to hold an evidentiary hearing regarding the added burden caused by

Covad's production of e-mails in MSG format.  An order accompanies this Memorandum

Opinion.


                    _____

                    JOHN M. FACCIOLA
                    UNITED STATES MAGISTRATE JUDGE