UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COVAD COMMUNICATIONS COMPANY,<br><br>   Plaintiff,<br><br>   v.<br><br>REVONET, INC.,<br><br>   Defendant. | Civil Action No. 06-1892 (CKK/JMF) |

REPORT AND RECOMMENDATION

Discovery in this case has proven complicated to the point of harrowing, and it has unfortunately led to my losing sight of the forest for the trees. The parties, counsel, and the Court have been so enmeshed in the discovery struggle that they may deviated far afield of the fundamental issue that divides the parties.

In her opinion of May 20, 2008 denying Revonet's motion for judgment on the pleadings, Judge Kollar-Kotelly found in the parties' submissions a fundamental question that precluded awarding the defendant the judgment on the pleadings that it sought. See Covad Commc'n Co. v. Revonet, Inc., 250 F.R.D. 14, 19 (D.D.C. 2008) (hereinafter Covad). Before issuing her opinion, Judge Kollar-Kotelly issued an order requesting that Covad provide the Court with answers to questions regarding what she called "apparent ambiguities" in Covad's Complaint and in its Opposition to Revonet's motion for judgment. Covad, 250 F.R.D. at 16. Covad stated in its response to her Order that it did not "allege that Revonet misappropriated or misused

'Client [] Information,'" which is defined in the Confidentiality Agreement as "customer lists, transaction data, and related information." Covad Communications Company's Notice Responding to the Court's April 28, 2008 Order [#28], at 2. Rather, Covad alleges that "the misappropriation and misuse at issue involves . . . unaggregated [sic], personally identifiable contact information." Id. (citing to Complaint ¶¶ 10-11, 28, and 29). Covad's answers to the questions posed by the Court did not resolve the ambiguities identified by Judge Kollar-Kotelly, and she denied Revonet's motion. The fundamental question preventing judgment on the pleadings was the proper definition and application of two terms: one that appeared in the contract between them and one that does not. See id. The terms at issue were "Client Information," which is defined in the parties' Mutual Confidentiality and Data Use Agreement ("Confidentiality Agreement"), and "Customer Lead Information," which is not. Judge Kollar-Kotelly anticipated that discovery would flesh out their meaning and use by the parties.

Discovery, however, soon became consumed by many other battles, including the latest premised on the claim by plaintiff that defendant has purposefully or negligently (or both) destroyed crucial electronically stored information. Incident to the controversy and pursuant to my direction, the parties stipulated that certain facts were true. See Joint Statement of Facts Not in Dispute [#73] ("Joint Stip."). They stipulated that defendant used information provided by plaintiff, deleted any reference to its origin, and used it as part of a universal database that included other similarly derived leads. More specifically, the parties stipulated that:

- Revonet "used Covad-related records in the Leads on Demand program and used data-handling methods to prevent those records from being identified as related to Covad." Joint Stip. ¶ 9.

- "[T]o populate the Leads on Demand program, Revonet copied leads records to a

- separate campaign called the "Gold Campaign," within the Revonet Federated Database." Id. at ¶ 10.

- "These records were reviewed, verified, historical notes and other elements were removed, and the resulting leads were input into the Leads on Demand database to be made available to other Revonet customers." Id.

- "Revonet account representatives pulled leads from the Gold Campaign and provided them to [the program manager for the Revonet Leads on Demand program] so that she could remove client-identifying data from those records before they were loaded into Leads on Demand." Id. at ¶ 11.

- The program manager "removed client-identifying data from the records which were then used in the Leads on Demand campaign." Id. at ¶ 3.

Judge Kollar-Kotelly's original concern about the difference in meaning and interpretation of the terms "Client Information" and "Customer Lead Information" has been overtaken by events. The central concern now is whether the stipulated facts, which indicate what information was used and how, do or do not establish a breach of the contract, regardless of the difference between these terms. Stated in another way, there is no genuine issue of material fact as to whether defendant transformed information it received from plaintiff and then used it. It is therefore most appropriate to focus with precision on that issue before any more time and effort is devoted to any other issue, including, of course, whether defendant destroyed pertinent electronically stored information. Surely, the interests in judicial efficiency and reducing expense to the parties require that this issue be immediately addressed.

I therefore recommend that all proceedings be stayed and that at the upcoming status conference Judge Kollar Kotelly address with the parties how this issue can be most promptly

resolved.

                                                                         _____
                                                                         JOHN M. FACCIOLA
                                                                         UNITED STATES MAGISTRATE JUDGE